SAYLES BILTMORE BLEACHERIES, INC. v. WILLIAM A. JOHNSON, COMMISSIONER OF REVENUE OF THE STATE OF NORTH CAROLINA.

(Filed 23 March, 1966.)

**1. Statutes § 5—**

    Words of a statute will be given their generally accepted meaning unless manifestly contrary to the legislative intent.

**2. Taxation §§ 26, 28c—**

    A textile finishing plant engaged in processing by mechanical and chemical means, for a fee on a contractual basis, unfinished textile goods owned by others into finished textile goods with qualities and characteristics different from those of the unfinished material, *is held* engaged primarily in manufacturing so that its income liability is measured by G.S. 105-134(6)a rather than by subsection f of that statute, and is engaged in manufacturing within the purview of G.S. 105-122 for the purpose of computing its franchise tax liability.

**3. Taxation § 36—**

A taxpayer contending that an additional assessment of income tax is invalid is not required to proceed under G.S. 105-134(6)g, but may pay the tax under protest, make proper demand for refund and, upon refusal, bring suit under G.S. 105-267.

MOORE, J., not sitting.

APPEAL by defendant, Commissioner of Revenue, from *Martin, S.J.,* August 1965 Session of BUNCOMBE.

Plaintiff, a Rhode Island corporation operating in this State, paid income taxes for 1957, 1958 and 1959 in accord with its interpretation of the taxing statute, G.S. 105-134, and franchise taxes for 1958 and 1959 in accord with its interpretation of the taxing statute, G.S. 105-122.

In April 1961 W. A. Johnson, then Commissioner of Revenue, notified plaintiff of a proposed assessment of income and franchise taxes, basing the proposed assessment on his interpretation of the taxing statutes. Plaintiff protested the proposed assessment. A hearing was had. The Commissioner held plaintiff liable for additional taxes and interest accrued. Plaintiff paid under protest the taxes assessed and interest accrued thereon. Within thirty days thereafter, it made written demand for refund. The Commissioner refused to refund any part of the sum paid. On May 6, 1964, plaintiff instituted this action pursuant to provisions of G.S. 105-267.

I. L. Clayton, the present Commissioner of Revenue, has entered his appearance as a party defendant.

The parties stipulated facts necessary for a determination of the controversy. The stipulated facts necessary for a decision are stated in the opinion.

*Van Winkle, Walton, Buck and Wall and Herbert L. Hyde for plaintiff.*

*Attorney General Bruton and Deputy Attorney General Abbott for defendant.*

RODMAN, E.J. Plaintiff asserts it is engaged in manufacturing, hence its income tax liability is measured by G.S. 105-134(6)a. Defendant asserts liability must be determined by the use of the single factor of gross receipts as required by subsection f. If plaintiff is principally engaged in manufacturing, it was not liable for the income tax assessment.

The parties stipulated:

"5. During all of the years 1957, 1958 and 1959 the plaintiff was engaged in the State of North Carolina in operating a

textile finishing plant and in finishing textile goods owned by others, on a contractual basis. The finishing of textile goods is an integral part of the operation of converting raw material (consisting of greige goods, dirty and unusable, as they come from the weaving mills) into finished textile goods which are fit for use, with qualities and characteristics not possessed in the greige, unfinished form. In finishing goods the plaintiff performed upon such unfinished materials the following operations:

(a) *Singeing* — The removal of hairy or fuzzy surface of the cloth by gas flame;

(b) *Removal of Sizing* — a chemical process for removal of starches used for sizing, which is placed in the goods by the weaver in order to make fibers less brittle and to increase the weaving efficiency; the operation consists of changing the starches to sugar which can then be dissolved and relatively easily removed;

(c) *Scouring or boiling* —
   (i) White goods, boiled under high pressure in an autoclave or kier, to destroy motes (specks of dirt and fragments of dead cotton) and pectin (a natural gum or wax);
   (ii) Colored goods, repeated scouring with water and detergents at a temperature of about 160 deg.

(d) *Bleaching* — in case of white goods, use of peroxide or chloride, including a number of rinsings performed in varying ways.

(e) *Mercerizing* — impregnation with caustic, with the fabric placed, while wet, on a tenter frame to give correct and uniform width and to apply tension during process of rinsing and drying, resulting in an added silky lustre, and making the fabric more workable, stronger and more receptive to dyes.

(f) *Finishing and dyeing* —
   (i) White goods — go into mangles with bluing added to give exactly the shade of white desired by customer, exact materials used affecting the finished quality;
   (ii) Dyed goods — different methods used to get desired color when dry;
   (iii) Both kinds — varying finishing operations and

procedures to give required softness, stiffness or whatever finish wanted, resin finishes, etc.

(g) *Calendering* — at various points, to give required surface, smooth, rough embossed, soft or stiff. Operations are performed upon certain goods in such a way as to create the following finished fabrics:

   (i) *Corduroy* — its creation basically and principally involves a mechanical operation (combined with other steps in finishing) resulting in a desirable cotton fabric having a piled surface, raised in cords, ridges or ribs.

   (ii) *Plisse'* — a cotton crepe material, crinkled by mercerizing in stripes (achieved by the application of chemical process) to give somewhat the same effect achieved in seersucker by the weaving operations.

   (iii) *Crease-resistant goods* — treatment during the various stages of finishing — converting ordinary rough, easily crumpled goods into a fine, smooth fabric which resists creasing.

   (iv) Non-shrinking goods — again, converted to this condition by various treatments in the operation of finishing.

   (v) *Lawns and organdies* — mechanically these two fabrics are the same construction when they come from the weaver and they can take either of two courses to the finished goods state — lawns wind up, however, as very soft sheer fabrics while organdies wind up as permanently stiff fabrics completely resistant to subsequent softening — when the finishing is completed lawns and organdies are two entirely different fabrics.

When courts are called upon to interpret legislative intent, the words selected by the Legislature should be given their generally accepted meaning unless it is manifest that such definition will do violence to legislative intent. *Byrd v. Piedmont Aviation, Inc.,* 256 N.C. 684, 124 S.E. 2d 880; *Seminary v. Wake County,* 251 N.C. 775, 112 S.E. 2d 528.

Webster defines the word "manufacture" as: "Something made from raw materials by hand or machinery; . . . the process or operation of making wares or other material or products by hand or machinery; . . . a productive industry using mechanical power and

machinery; . . . the act or process of making, inventing, devising, or fashioning." "Manufacturing" is defined as: "(1) to make (as raw material) into a product suitable for use (the wood . . . is manufactured into fine cabinetwork). (2) to make from raw materials by hand or machinery." "Manufacturer" is defined as: "an employer of workers in manufacturing; the owner or operator of a factory; . . . one who changes the form of a commodity, or who creates a new commodity." Other lexicographers agree with the Webster definitions. Bouvier's Law Dictionary, Rauls Revision; 55 C.J.S. 672.

It is sometimes difficult to draw the line marking a change from a raw material to a finished product. The subject is dealt with at length in *In Re Rheinstrom & Sons Co.*, 207 F. 119; *Assessors of Boston v. Commissioners of Corporations and Taxation*, 84 N.E. 2d 129; *Central Trust Co. v. George Lueders*, 221 F. 829; *Commonwealth v. Meyer*, 23 S.E. 2d 353; *Commonwealth v. Peerless Paper Specialty*, 25 A. 2d 323; *Moore v. Farmers Mutual Mfg. & Ginning Co.*, 51 Ariz. 378, 77 P. 2d 209.

The business of manufacturing an article is essentially different from that of selling the article after it has been manufactured. *Caffee v. City of Portsmouth*, 128 S.E. 2d 421. As said in *Bedford Mills v. U. S.*, 59 F. 2d 263: "There are many manufacturers who do not themselves make all the elements that go into their finished products, but have them made by others. . . . If A conceives the possibility of applying to gray goods a finishing process which will convert the rough, unfinished gray goods into an article of commerce different from ordinary gray goods, and in virtue of such an idea a new form of textile is placed upon the market, it seems to us that A is as much a manufacturer under the tax law as if he himself performed the physical labor of creating the product. It is true, generally speaking, we would say B. and C whose combined efforts produced the finished product, are manufacturers. . . ."

The parties have stipulated and the court has found as a fact that plaintiff "was engaged . . . in operating a textile finishing plant and in finishing textile goods owned by others, on a contractual basis. The finishing of textile goods is an integral part of the operation of converting raw materials . . . into finished textile goods which are fit for use, with qualities and characteristics not possessed in the greige, unfinished form. . . . Operations are performed upon certain goods *in such a way as to create the following finished fabrics:*" Then follows an enumeration of five different kinds of goods, each having different characteristics.

Plaintiff under the facts stipulated is a manufacturer as that

word is generally understood. We hold that plaintiff is principally engaged in the manufacture of tangible personal property. The mere fact that it receives a fixed stipend for changing the raw material into a finished product does not change its business from that of manufacturing. It follows that plaintiff's income tax was properly computed by it as provided in G.S. 105-134(6)a, and not under subsection f of that statute, as defendant contends.

The statute, G.S. 105-122, making plaintiff subject to a franchise tax is substantially similar to the statute relating to income taxes. The State does not challenge the correctness of plaintiff's computation of its franchise tax if in fact it was a manufacturer. Having so held, it follows that the assessment of an additional franchise tax was invalid.

The assessment of additional income and franchise taxes was an illegal assessment.

Plaintiff does not and has not sought relief under the provisions of G.S. 105-134(6)g. Its position is and has been that the assessment was an invalid assessment. It paid the tax under protest, made proper demand for refund, and when the State declined to refund, it brought suit. It followed strictly the statute, G.S. 105-267, authorizing the recovery of taxes illegally assessed.

Affirmed.

MOORE, J., not sitting.