STATE OF NORTH CAROLINA v. LARRY RAY MITCHELL

No. 273A86

(Filed 9 March 1988)

1. **Constitutional Law § 60; Jury § 7.14— peremptory challenges—failure to show racial basis**

    Defendant failed to present an adequate record on appeal from which to determine whether jurors were improperly excused by peremptory challenges on the basis of race in this first degree murder and armed robbery prosecution.

2. **Jury § 7.14— motion to prohibit peremptory challenges of blacks—denial proper**

    The trial court properly denied defendant's motion to prohibit the State from peremptorily challenging black jurors since the State is not prohibited from peremptorily excusing black jurors for reasons other than race.

3. **Jury § 7.14— motion for court reporter to note race of potential jurors—denial proper**

    The trial court properly denied defendant's motion to require the court reporter to note the race of every potential juror examined since an individual's race is not always easily discernible, and the potential for error by a court reporter acting alone is great. If a defendant believes a prospective juror to be of a particular race, he can bring this fact to the trial court's attention and ensure that it is made a part of the record, and if there is any question as to the prospective juror's race, this issue should be resolved by the trial court based upon questioning of the juror or other proper evidence.

4. **Criminal Law § 102— capital case—guilt-innocence and sentencing phases—refusal to allow final arguments by both defense counsel—prejudicial error per se—effect on noncapital charges**

    The trial court's refusal to permit both counsel for defendant to address the jury during defendant's final arguments in the guilt-innocence and sentencing phases of a capital case constituted prejudicial error per se in both phases, and such error in the guilt-innocence phase entitles defendant to a new trial as to the capital felony. Further, in cases in which a capital felony has been joined for trial with noncapital charges, failure of the trial judge to allow both of defendant's attorneys to make the closing argument is also prejudicial error in the noncapital cases. N.C.G.S. § 84-14; N.C.G.S. § 15A-2000(a)(4); Rule 10, General Rules of Practice for the Superior and District Courts.

    Justice MARTIN dissenting.

    Justice MEYER joins in this dissenting opinion.

APPEAL of right by the defendant from a judgment sentencing him to death for murder in the first degree entered by *Hob-*

*good (Hamilton H.), J.*, at the 17 March 1986 Criminal Session of Superior Court for SURRY County. Heard in the Supreme Court on 13 October 1987.

*Lacy H. Thornburg, Attorney General, by Ralf F. Haskell, Special Deputy Attorney General, for the State.*

*James L. Dellinger, Jr. and Terry L. Collins for the defendant appellant.*

MITCHELL, Justice.

The defendant was tried upon proper indictments and convicted of murder in the first degree, armed robbery, aiding and abetting in armed robbery, and felonious conspiracy. In the murder case the jury found the defendant guilty on both the theory of felony murder and the theory of premeditation and deliberation. At the sentencing hearing the jury found that the aggravating circumstances outweighed the mitigating circumstances and that the aggravating circumstances were "sufficiently substantial to call for the imposition of the death penalty." N.C.G.S. § 15A-2000(c)(2) (1983). The trial court entered judgments on 28 March 1986 sentencing the defendant to death for murder in the first degree and to imprisonment in each of the other cases. The defendant appealed his murder conviction and death sentence to this Court as of right pursuant to N.C.G.S. § 7A-27(a). We allowed the defendant's motion to bypass the Court of Appeals as to the appeals of the other convictions in an order entered 26 May 1987.

On appeal the defendant makes numerous assignments of error relative to the guilt-innocence phase and the sentencing phase of his trial. We conclude that one assignment has merit. The trial court's refusal at each phase of this capital trial to permit both counsel for the defendant to address the jury in the defendant's final argument constituted prejudicial error per se. Accordingly, the defendant is awarded a new trial.

The State's evidence at trial tended to show that on 30 January 1985, the defendant was with Don Love and Davie Reynolds in a car driving along U.S. 52 and Cook School Road in Surry County near Pilot Mountain, North Carolina. The defendant told the driver of the vehicle, Reynolds, to pull the car over to the side of Cook School Road within view of Arnold's Amoco Store.

The defendant then asked whether Arnold's Amoco Store would be a good place to "hit." The defendant asked Reynolds if he was "game" for robbing the store. Reynolds said that he was not. The defendant then asked Love if he was "game" to rob the store. Love said that he was. The defendant asked Love if he had his "piece" (referring to his gun) with him and told Reynolds to drive by Arnold's Amoco so he could look at the store. As the car drove past the store, the defendant slid down in his seat and told Reynolds to pull off on the next road past the store and stop. The defendant then asked Reynolds to go down to the Arnold's Amoco and see if there was a back door and also see how many people were in the store. After Reynolds returned from the store, the defendant said he would "handle" the cash register in the store. Love said he would "handle" the people. The defendant pulled out the gun he was carrying and placed it in an outside pocket. The defendant and Love then proceeded toward Arnold's Amoco on foot.

As the defendant and Love walked toward the store, the defendant took out his pistol, a .25 caliber automatic, and pulled back on the weapon to place a bullet in the chamber. The defendant said that he "wouldn't leave nobody talking." Inside the store were Howard Bryant, Frank Jones, and Charlie Hunter. The defendant and Love entered the store with their guns concealed. The defendant asked Bryant if the store sold beer. Bryant said that they did not. Subsequently, the defendant drew his gun, grabbed Hunter around the neck, pointed the gun at Bryant and told him to open the cash register. The defendant said that he had "killed two the night before and it don't make no difference if I kill any more." After the cash register was open, the defendant forced Bryant and Hunter to lie face down on the floor. The defendant took approximately $1,000 from the store's cash register. The defendant then put his gun to the back of Bryant's head, searched his pockets, and took five silver dollars from him. Love also drew his pistol, a .22 revolver, and forced Jones to give him his wallet containing $270 in cash.

During the course of the robbery, Danny Hall drove into the parking lot of Arnold's Amoco with his wife, intending to cash a check. Hall opened the front door of the store and started to enter. As Hall was entering the store, he noticed the robbery in progress. The defendant ordered Hall to "get in here," but Hall

turned and started to run. The defendant grabbed him, but Hall broke loose and continued to run. Hall said, "Don't shoot me." The defendant said, "No you don't, come back here." The defendant then fired his gun at Hall twice, and one of the shots struck Hall killing him. The defendant then left, firing another shot toward the store. He and Love got into the car and were driven away by Reynolds. The defendant later told George France and Craig Simmons that he had killed someone and showed Simmons how he had shot Hall in the back.

The defendant offered no evidence at the guilt-innocence phase of the trial. During the sentencing phase, he offered the testimony of his sister as to his bad family life. The State presented as aggravating circumstances that the defendant had a previous conviction for second degree murder in 1971, and one for assault with a deadly weapon with intent to kill inflicting serious bodily injury in 1985.

The defendant, a thirty-three-year-old black male, first assigns as error the exclusion of black jurors on the basis of race. On 27 February 1986 the defendant filed a motion to prohibit the State from peremptorily challenging black jurors. This motion was denied. The defendant also filed a motion to require the court reporter to note the race of every potential juror examined to perfect the record and determine if there was a substantial likelihood that any jurors were challenged on the basis of race. This motion was also denied. The defendant argues that in denying his motion to prohibit the State from peremptorily challenging black jurors, the trial court set no limits concerning the basis upon which the prosecutor could peremptorily challenge any juror. He contends that the denial of this motion violated his right to trial by an impartial jury under the sixth amendment and article 1, section 24 of the Constitution of North Carolina.

It is now a well-settled principle that the use of peremptory challenges to exclude potential jurors solely on account of their race is unconstitutional. *Batson v. Kentucky*, 476 U.S. 79, 90 L.Ed. 2d 69 (1986); *State v. Belton*, 318 N.C. 141, 347 S.E. 2d 755 (1986). Indeed, this principle is so fundamental that it extends to discrimination in the selection of grand jury foremen, *State v. Cofield*, 320 N.C. 297, 357 S.E. 2d 622 (1987), and to the selection of jurors

in civil cases, *Jackson v. Housing Authority*, 321 N.C. 584, 364 S.E. 2d 416 (1988).

In *Batson* the Supreme Court of the United States held that "the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race." *Batson*, 476 U.S. at 89, 90 L.Ed. 2d at 83. The Court established a three-part test for a defendant to establish a prima facie case of purposeful discrimination:

> To establish such a case, the defendant first must show that he is a member of a cognizable racial group, . . . and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits 'those to discriminate who are of a mind to discriminate.' (Citations omitted.) Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race.

*Id.* at 96, 90 L.Ed. 2d at 87-88. Thus, the burden is on a criminal defendant who alleges racial discrimination in the selection of the jury to establish an inference of purposeful discrimination. The defendant must provide the appellate court with an adequate record from which to determine whether jurors were improperly excused by peremptory challenges at trial. Statements of counsel alone are insufficient to support a finding of discriminatory use of peremptory challenges. *Jackson v. Housing Authority*, 321 N.C. at 585, 364 S.E. 2d at 417.

[1] The defendant here, however, does not rely on *Batson* for relief. He relies instead on an argument based upon rights emanating from the sixth amendment's guarantee of an impartial jury as expounded in *McCray v. Abrams*, 750 F. 2d 1113 (2d Cir. 1984). In *McCray* the United States Court of Appeals for the Second Circuit interpreted the sixth amendment's guarantee of an impartial jury to mean that a criminal defendant is entitled to a jury from which distinctive groups of persons have not been systematically excluded, to ensure insofar as practicable that the jury represents a fair cross-section of the community. The Second Circuit recog-

nized that the sixth amendment does not guarantee a jury fairly representative of the community, but concluded that it does guarantee a defendant a fair chance at such a jury. The *McCray* Court went on to hold that a defendant could establish a prima facie violation of his right to the possibility of a representative jury by showing: (1) that the group excluded is a "cognizable group in the community"; and (2) that there is a "substantial likelihood" that jurors were peremptorily challenged solely because of their race. *Id.* at 1131-32. As in *State v. Belton*, 318 N.C. 141, 347 S.E. 2d 755, however, we need not decide today whether to employ, under either the sixth amendment or article I, section 24 of the Constitution of North Carolina, the fair cross-section analysis used by the Second Circuit in *McCray*. The defendant has failed to present an adequate record on appeal from which to determine whether jurors were improperly excused by peremptory challenges on the basis of race.

[2]  Here, the defendant first filed a motion to prohibit the State from peremptorily challenging black jurors. The trial court properly denied the motion. To have allowed the motion would have entirely prohibited the State from exercising peremptory challenges to excuse blacks, regardless of motive. Such a ruling is contrary to the holdings in both *Batson* and *McCray*. The State is not prohibited from peremptorily excusing black jurors for reasons other than race. These cases only prohibit the exclusion of potential black jurors *solely on the basis of race*. Moreover, this Court upheld the use of peremptory challenges to excuse blacks for nondiscriminatory purposes in *Belton*.

[3]  After the first motion was denied, the defendant filed a motion to require the court reporter to note the race of every potential juror examined, which was also denied. Although this approach *might* have preserved a proper record from which an appellate court could determine if any potential jurors were challenged solely on the basis of race, we find it inappropriate. To have a court reporter note the race of every potential juror examined would require a reporter alone to make that determination without the benefit of questioning by counsel or any other evidence that might tend to establish the prospective juror's race. The court reporter, however, is in no better position to determine the race of each prospective juror than the defendant, the court, or counsel. An individual's race is not always easily discernible,

and the potential for error by a court reporter acting alone is great. As the trial court noted, "[The clerk] might note the race as being one race and in fact that person is another race. . . . [M]y observation has been you can look at some people and you cannot really tell what race they are." The approach suggested by the defendant would denigrate the task of preventing peremptory challenges of jurors on the basis of race to the reporter's "subjective impressions as to what race they spring from." *See Batson*, 476 U.S. at 130 n. 10, 90 L.Ed. 2d at 109 n. 10 (Burger, C.J., dissenting).

If a defendant in cases such as this believes a prospective juror to be of a particular race, he can bring this fact to the trial court's attention and ensure that it is made a part of the record. Further, if there is any question as to the prospective juror's race, this issue should be resolved by the trial court based upon questioning of the juror or other proper evidence, as opposed to leaving the issue to the court reporter who may not make counsel aware of the doubt. In the present case the defendant did not avail himself of this opportunity, despite the trial court's suggestion at the pre-trial hearing that he might wish to do so during jury selection.

THE COURT: Well, who knows what the race is of some of them? You want to ask all of them whether they are of white or negroid race? or Asian or something?

MR. DELLINGER: I would like to have the right to ask that. And I think I do. About ten days away from trial, I don't know if I'm going to ask it or not.

For whatever reason, counsel chose not to make any such inquiry at trial. Thus, the defendant has failed to demonstrate that the prosecutor exercised peremptory challenges solely to remove members of any particular race from the jury. This assignment of error is overruled.

[4] In another assignment of error, the defendant argues that the trial court erred during the final arguments of counsel, in both the guilt-innocence and penalty phases of the trial, by refusing to allow more than one of his counsel to address the jury in

his final arguments* during closing. We find merit in this assignment.

As the defendant presented no evidence during the guilt-innocence phase of the trial, he was entitled to present both the opening and final arguments to the jury during the closing arguments for that phase. *State v. Gladden,* 315 N.C. 398, 421, 340 S.E. 2d 673, 688, *cert. denied,* --- U.S. ---, 93 L.Ed. 2d 166 (1986); Rule 10, General Rules of Practice for the Superior and District Courts. Further, the defendant always has a statutory right to present the last or final argument during the closing arguments at the sentencing phase, without regard to whether he has presented evidence during that phase. N.C.G.S. § 15A-2000(a)(4) (1983). Therefore, the defendant in the present case was entitled to the last or final argument at both the guilt-innocence phase and sentencing phase of his trial.

The defendant requested that both of his counsel be allowed to address the jury during the final argument in the guilt-innocence phase and the final argument in the sentencing phase. The trial court recognized that the defendant was entitled to make the first argument and the final argument during the closing arguments in the guilt-innocence phase, because the defendant had offered no evidence. The trial court, however, ruled that during the closing arguments of counsel in that phase, only one counsel for the defendant could speak during his first argument and only one could speak during his final argument. The trial court also ruled that only one counsel for the defendant could address the jury during the defendant's final argument in the sentencing phase.

N.C.G.S. § 84-14 provides:

> In all trials in the superior court there shall be allowed two addresses to the jury for the State or plaintiff and two for the defendant, *except in capital felonies,* when there *shall be no limit as to number.* The judges of the superior court are authorized to limit the time of argument of counsel to the jury on the trial of actions, civil and criminal as follows: to

---

*Throughout this discussion we use the term "final argument" to refer to the last argument made during the series of closing arguments at the end of the trial or sentencing proceeding.

not less than one hour on each side in misdemeanors and ap-
peals from justices of the peace; to not less than two hours
on each side in all other civil actions and in felonies less than
capital; *in capital felonies, the time of argument of counsel
may not be limited otherwise than by consent, except that
the court may limit the number of those who may address
the jury to three counsel on each side.* Where any greater
number of addresses or any extension of time are desired,
motion shall be made, and it shall be in the discretion of the
judge to allow the same or not, as the interests of justice
may require. In jury trials the whole case as well of law as of
fact may be argued to the jury.

N.C.G.S. § 84-14 (1985) (emphasis added).

In *Gladden* we indicated that in capital cases N.C.G.S. § 84-14
allows the trial court to limit the defendant to three counsel, but
that at each point at which the defendant has the right to present
an argument to the jury:

those three (or however many actually argue) may argue for
as long as they wish and *each may address the jury as many
times as he desires.* Thus, for example, if one defense at-
torney grows weary of arguing, he may allow another de-
fense attorney to address the jury and may, upon being
refreshed, rise again to make another address during the
defendant's time for argument.

315 N.C. at 421, 340 S.E. 2d at 688 (emphasis added).

We indicated in *State v. Eury,* 317 N.C. 511, 346 S.E. 2d 447
(1986), that when a defendant is entitled to the final or last jury
argument, during the closing arguments in a capital case,

his attorneys may each address the jury as many times as
they desire during the closing phase of the arguments. The
only limit to this right is the provision of N.C.G.S. § 84-14
allowing the trial judge to limit to three the number of
counsel on each side who may address the jury.

*Id.* at 516-17, 346 S.E. 2d at 450. Because only one of his counsel
had been allowed to address the jury during his final argument in
the guilt-innocence phase of his trial, we awarded the defendant a
new trial in that case.

Finally, in *State v. Simpson*, 320 N.C. 313, 357 S.E. 2d 332 (1987), we held that the trial court's refusal to permit both counsel for the defendant to address the jury during the defendant's statutorily guaranteed final argument in the sentencing phase of his capital case "deprived the defendant of a substantial right and amounted to prejudicial error." *Id.* at 327, 357 S.E. 2d at 340. The defendant was awarded a new sentencing hearing.

In the present case the State concedes that the trial court erred during the defendant's final argument at the guilt-innocence phase, and again at the sentencing phase, by refusing to permit both of the defendant's counsel to address the jury. The State, however, argues that this Court applied a harmless error analysis in *Eury*, and that these errors were harmless in the present case in light of the compelling evidence against the defendant. We find the State's arguments unpersuasive.

In *Eury* it was unnecessary to decide whether such error was prejudicial per se, because on the specific facts before us we concluded that "one can only speculate as to how the jury would have reacted had defendant not been deprived of her substantial right to have both counsel make closing argument." 317 N.C. at 517, 346 S.E. 2d at 450. We now conclude that these concerns expressed in *Eury* are common to all cases in which defendants are deprived of their right to have all of their counsel address the jury during each argument that they are entitled to make at the conclusion of either phase of a capital case. Therefore, we hold that the trial court's refusal to permit both counsel to address the jury during the defendant's final arguments constituted prejudicial error per se in both the guilt-innocence and sentencing phases. Such error in the guilt-innocence phase entitles the defendant to a new trial as to the capital felony. Further, the foregoing principles of law require us to hold in cases where a capital felony has been joined for trial with noncapital charges "that the failure of the trial judge to allow both of defendant's counsel to make the closing argument was prejudicial error in the noncapital as well as the capital charges." *State v. Eury*, 317 N.C. at 518, 346 S.E. 2d at 451. Therefore, the defendant is also entitled to a new trial as to the noncapital charges in the present case.

In fairness to the trial court, we note that *Gladden, Eury,* and *Simpson* were not available to provide the trial court

guidance in the present case. The judgments were entered against this defendant prior to our decisions in those cases.

We need not address the defendant's remaining assignments of error, as the alleged errors are unlikely to arise again at a new trial.

New trial.

Justice MARTIN dissenting.

The majority awards a new trial to the defendant because the trial judge failed to allow both of defendant's counsel to participate in the closing arguments to the jury. I dissent for the failure of the majority to apply a harmless error analysis to the error to determine whether prejudice resulted.

This Court first addressed this issue in *State v. Eury*, 317 N.C. 511, 346 S.E. 2d 447 (1986), where the Court held that it was error to refuse to allow both of defendant's counsel to participate in the closing argument. The Court then determined whether the ruling constituted prejudicial error, applying a harmless error analysis. *Eury* does not establish a per se prejudicial error rule.

Nevertheless, the majority of this Court in *State v. Simpson*, 320 N.C. 313, 357 S.E. 2d 332 (1987), relied upon *Eury* for the statement that the error "deprived the defendant of a substantial right and amounted to prejudicial error." 320 N.C. at 327, 357 S.E. 2d at 340. The two dissenters in *Simpson* demonstrated the fallacy of this statement.

The majority here seeks to avoid the holding of *Eury*, stating that in *Eury* it was unnecessary for the Court to decide whether the error was prejudicial per se. At no place in *Eury* do we find the words "per se"; the Court did not decline to determine the per se issue in *Eury*. Whether the error was per se prejudicial was simply not involved in *Eury*.

This is not the kind of error which automatically results in prejudice—it is to be remembered that this issue does not involve constitutional rights. *Cf. State v. Bindyke*, 288 N.C. 608, 220 S.E. 2d 521 (1975) (presence of alternate juror during deliberations violated state constitutional guarantees and was prejudicial per se). Rather, it is a matter of statutory construction of N.C.G.S.

§ 84-14. The statute itself does not provide that violations of it are per se prejudicial error. The rule of this jurisdiction is that unless otherwise provided the defendant has the burden to show not only error but prejudice as well. *State v. White*, 307 N.C. 42, 296 S.E. 2d 267 (1982); *State v. Atkinson*, 298 N.C. 673, 259 S.E. 2d 858 (1979). The test for harmless error is whether there is a reasonable possibility that had the error not been committed a different result would have been reached at trial. N.C.G.S. § 15A-1443 (a) (1983).

I find the majority erred in holding that the failure of the trial court to allow both counsel to make the closing arguments constitutes prejudicial error per se. Not one single case or authority from any jurisdiction is cited for this holding.

This case demonstrates exactly why this Court established a harmless error rule in *Eury*. Here the state's evidence was overwhelming and compelling. Eyewitnesses testified to defendant's participation in the robbery and murder of an innocent bystander. The defendant planned the armed robbery, recruited his accomplices, and approached the store with a bullet in the firing chamber of his pistol with the purpose that he "wouldn't leave nobody talking." The victim Hall was shot in the back.

Moreover, the jury found the following aggravating circumstances: the murder was committed while defendant was engaged in an armed robbery; the murder was a part of a course of conduct by defendant including additional crimes of violence against others; the murder was for pecuniary gain. As mitigating circumstances the jury found: the defendant loved, respected, and provided financial assistance to his mother, father, and siblings; defendant was one of seven children and his mother and father died before he was fourteen years old; defendant was raised in poverty and left home before he was eighteen years old; defendant was first sent to prison before he was nineteen years old. Upon weighing these findings the jury concluded that the aggravating circumstances outweighed the mitigating circumstances and that the aggravating circumstances were sufficiently substantial to call for the death penalty.

Can it be said that had both counsel taken part in the final arguments and argued "until blue in the face," there is a reasonable possibility that a different result would have been reached? I

think not. As Justice Huskins said in his dissenting opinion in *Hatcheries, Inc. v. Coble*, "the law does not require judges to be more ignorant than other people." 286 N.C. 518, 524, 212 S.E. 2d 150, 154 (1975).

Furthermore, the majority erred in finding that the failure of the trial court to allow both of defendant's counsel to make the closing argument in the felony cases resulted in prejudicial error per se. Different considerations apply to noncapital felony cases. N.C.G.S. § 84-14 does not establish a right for defendant to have two different lawyers argue on his behalf at any stage of the proceedings. The statute only guarantees the defendant the right to make two *addresses* to the jury, not to have two *lawyers* make the addresses. In capital cases defendant has a right to have as many as three *lawyers* to argue and the number of addresses is unlimited. *State v. Gladden*, 315 N.C. 398, 340 S.E. 2d 673, *cert. denied*, --- U.S. ---, 93 L.Ed. 2d 166 (1986).

Here, defendant was provided with his two statutory addresses to the jury in the trial of the felony charges. His counsel made the opening and closing arguments. The sentencing hearing was only for the capital charge, and the arguments of counsel at that time were completely irrelevant to the felony charges. The trial judge did not err with respect to the jury arguments in the trial of the felony cases. The determination of error in the felony cases and the capital charge must be made separately as different rules of law apply. The majority erred in sweeping the felony cases in with the capital charge.

There was no error with respect to the arguments in the felony charges and no prejudicial error in the capital case.

Justice MEYER joins in this dissenting opinion.