IN RE WILL OF HUBNER

[105 N.C. App. 599 (1992)]

---

IN THE MATTER OF THE WILL OF DOROTHY J. HUBNER, DECEASED

No. 9128SC406

(Filed 3 March 1992)

1. **Wills § 66 (NCI3d)— failure of testatrix to prevent lapse of gift—no substitution made**

    Where testatrix had both the knowledge and the ability to prevent the lapse of the gifts to the parties in her will who would not otherwise be eligible to share in her estate, her failure to do so indicated no testamentary intent to prevent the lapse of such gifts, nor was there any sufficiently clear language of substitution for these devisees; therefore, there

was no basis for the court to conclude that testatrix intended the daughter of one of her husband's half-brothers to take the lapsed shares to the exclusion of all others.

**Am Jur 2d, Wills §§ 1665-1669.**

**Testator's intention as defeating operation of antilapse statute. 63 ALR2d 1172.**

2. **Wills § 66.1 (NCI3d)— anti-lapse statute—qualified issue—share of lapsed residuary gift**

The 1987 amendment to N.C.G.S. § 31-42(a) ensures that qualified issue will take by substitution the "whole legal share" to which his or her predecessor was entitled. If the predecessor would have taken a share of a lapsed residuary gift, the qualified issue may also participate in this lapsed gift.

**Am Jur 2d, Wills §§ 1671, 1673.**

APPEAL by respondents from summary judgment filed 3 January 1991 by *Judge C. Walter Allen* in BUNCOMBE County Superior Court. Heard in the Court of Appeals 19 February 1992.

*Roberts, Stevens & Cogburn, by Allan P. Root, for Respondent-Appellant Florence Stephens.*

*Richard S. Daniels for Respondent-Appellant Ruth McGuire.*

*Adams, Hendon, Carson, Crow & Saenger, by Philip G. Carson and Martin K. Reidinger, for Respondents-Appellees Jean Peterson, Barbara Tschopp, Linda Mandell, and Sharon Ribordy.*

*No brief for First Union National Bank, Executor of the Estate of Dorothy J. Hubner.*

LEWIS, Judge.

The issue in this case is whether heirs who partake of a devise pursuant to the anti-lapse statute are entitled to a share of a lapsed residuary gift.

Dorothy J. Hubner died testate on 3 July 1989. After reciting multiple gifts, item six of the will provided:

In the event my husband predeceases me, after payment of the bequests set forth in Item Five hereof, I direct my Executor to divide my Residuary Estate into two equal shares:

**IN RE WILL OF HUBNER**

[105 N.C. App. 599 (1992)]

### A.

One of such shares shall be further divided into four equal parts and I give, devise and bequeath one part to each of my brothers and sisters, Julius S. Gregorius, . . . , Ruth M. McGuire, . . . , Hazel I. Ehlers, . . . , and Earl G. Gregorius . . . , absolutely and forever. In the event either or both Ruth M. McGuire and/or Hazel I. Ehlers have predeceased me, I direct that the equal part to which either or both would have been entitled be divided equally between Julius S. Gregorius and Earl G. Gregorius.

### B.

The other and equal share shall be further divided into two equal parts, and I give, devise and bequeath one part to my husband's half brother, Louis H. Figgins, . . . , absolutely and forever, and the other and equal part shall be divided into three equal portions which I give and bequeath to the surviving children of my husband's half brother, Edward O. Figgins, to-wit: my nieces, Corinne Figgins, . . . , Florence Stephens, . . . , and Helen Davis, . . . , absolutely and forever.

Decedent left neither husband nor descendants. She was survived by: Ruth McGuire, Florence Stephens, Julius Gregorius' daughter, Jean Peterson, and by Earl Gregorius' daughters, Barbara Tschopp, Linda Mandell, and Sharon Ribordy. On 9 July 1990, the executor, First Union National Bank, filed suit for guidance as to the distribution of the estate. Upon summary judgment, the trial court determined that the estate should be divided accordingly: Jean Peterson 9/28, Barbara Tschopp 3/28, Linda Mandell 3/28, Sharon Ribordy 3/28, Ruth McGuire 6/28, and Florence Stephens 4/28. Both Ruth McGuire and Florence Stephens appeal.

There is no argument as to the disposition of the lapsed bequests to Julius and Earl Gregorius. Their shares are to be distributed to their respective daughters. At issue is the proper distribution of the lapsed bequest to Helen Davis, Louis and Corinne Figgins. At common law, gifts to deceased individuals lapsed. North Carolina's Anti-lapse Statute, N.C.G.S. § 31-42, prevents this common law result under certain circumstances. A devise to a deceased individual does not lapse when the deceased devisee leaves surviving issue who would have been testator's heirs by intestate succession. These surviving issue are designated "qualified issue." N.C.G.S.

§ 31-42(b) (cum. sup. 1991). The anti-lapse statute does not apply where the will expresses a "contrary intent." N.C.G.S. § 31-42(a) (cum. sup. 1991).

[1] Florence Stephens argues that the will reflects Dorothy Hubner's intent to distribute her estate equally between her family and her husband's.

> The paramount aim in the interpretation of a will is to ascertain if possible the intent of the testator. In our effort to ascertain the testator's intent, we must consider the instrument as a whole and give effect to such intent, unless it is contrary to some rule of law or at variance with public policy.

*Entwistle v. Covington*, 250 N.C. 315, 318, 108 S.E. 2d 603, 606 (1959) (citation omitted). Should the testator desire to prevent lapse, he must express his intent that the gift not lapse or must provide for substitution of another devisee to receive the gift. *Entwistle*, 250 N.C. at 321, 108 S.E. 2d at 607. The anti-lapse and substitution language must be "sufficient[ly] [clear], what person or persons [testator] intended to substitute for the legatee dying in his lifetime." *Id.*, (*quoting* 96 CJS, Wills, § 1216, page 1053, *et seq.*). Otherwise, the anti-lapse statute applies.

In *Wachovia Bank & Trust Co. v. Shelton*, 229 N.C. 150, 48 S.E. 2d 41 (1948), a devise to one of collateral kinship lapsed because the devisee predeceased the testatrix. Taking into consideration that decedent obviously drafted her will with advice of counsel and that she had provided for substitution to prevent the lapse of some gifts, but not others, our Supreme Court concluded that decedent knew how to prevent lapse of gifts to collateral kin. Because she had the knowledge and ability to prevent lapse, but did not do so, the Court held that there was no intent in the will to keep the gift in question from lapsing.

In the case at bar, there was no clear language which prevented lapse of the gifts in question, nor language which substituted Florence Stephens for the other members of Mr. Hubner's family. Upon review, we find that Mrs. Hubner's will was obviously drafted with legal assistance, that she required that her sisters survive her in order to take, and that she provided for substitution in the case her sisters predeceased her. As in *Shelton*, Mrs. Hubner had both the knowledge and the ability to prevent the lapse of the gifts to the parties in her will who would not otherwise be

eligible to share in her estate. Mrs. Hubner's failure to do so, like the failure to take such action in *Shelton*, indicates no testamentary intent to prevent the lapse of the Figgins or Davis gift. Nor is there any "sufficiently clear" language of substitution for these devisees. We find no basis for concluding that Mrs. Hubner intended Florence Stephens to take the lapsed shares to the exclusion of all others.

[2] The second and third arguments can be consolidated. Ruth McGuire and Florence Stephens argue that pursuant to N.C.G.S. § 31-42(c)(2) (cum. supp. 1991) the lapsed gifts should be split equally between them. The statute provides:

> Where a residuary devise or legacy is void, revoked, lapsed or for any other reason fails to take effect with respect to any devisee or legatee named in the residuary clause itself or a member of a class described therein, then such devise or legacy shall continue as part of the residue and shall pass to the other residuary devisees or legatees if any; or, if none, shall pass as if the testator had died intestate with respect thereto.

N.C.G.S. § 31-42(c)(2) (cum. sup. 1991).

This argument relies upon *Bear v. Bear*, 3 N.C. App. 498, 165 S.E. 2d 518 (1969). In *Bear*, another panel of this Court indicated "[a]s we view G.S. 31-42 (c) (2), [this] subsection is applicable only where there are other residuary devisees or legatees *named in the will who survive the testator.*" *Id.* at 505, 165 S.E. 2d at 523 (emphasis original). The Court in *Bear* held that heirs who take pursuant to a section (a) substitution are not "named in the will" and are not eligible to participate in the lapsed residuary gift under section (c). *Id.* at 506, 165 S.E. 2d at 523. Two factors were significant to this holding. First, the Court focused on the fact that section (c) begins by stating that it applies when section (a) does not apply. Second, the language in section (c) which provides that "[w]here a residuary devise or legacy . . . *lapsed* . . . with respect to any devisee or legatee *named in the residuary clause itself* . . . , then such devise or legacy shall continue as a part of the residue and shall pass to the other residuary devisees or legatees if any. . . ." N.C.G.S. § 31-42(c)(2) (1984) (emphasis added).

Circumstances have changed since the *Bear* decision. The antilapse statute has been amended. The 1987 amendments, applicable

to wills taking effect on or after 1 October 1987, added the following underlined portion to section (a):

> Unless a contrary intent is indicated by the will, where a devise or legacy of any interest in property is given to a person as an individual or as a member of a class and the <u>person dies survived by qualified issue before the testator dies, then the qualified issue of such deceased person that survive the testator shall represent the deceased person, and the entire interest that the deceased person would have taken had he survived the testator shall pass by substitution to his qualified issue.</u>

N.C.G.S. § 31-42(a) (cum. sup. 1991) (emphasis added). The question at hand requires the reinterpretation of the anti-lapse statute in view of the amendment. "When courts are called upon to interpret legislative intent, the words selected by the Legislature should be given their generally accepted meaning unless it is manifest that such definition will do violence to the legislative intent." *Bear,* 3 N.C. App. at 504, 165 S.E. 2d at 522 (*quoting, Sayles Biltmore Bleacheries Inc. v. Johnson,* 266 N.C. 692, 694, 147 S.E. 2d 177 (1966) ). Entire is defined as "whole; without division, separation, or diminution; unmingled; complete in all its parts; not participated in by others." Black's Law Dictionary 477 (5th ed. 1979). Interest denotes a "right, claim, title, or legal share in something." *Id.* at 729. Hence, this additional language ensures that qualified issue will take by substitution the "whole legal share" to which his predecessor was entitled. If the predecessor would have taken a share of a lapsed residuary gift, then the qualified issue may also participate in this lapsed gift.

In the case at bar, all parties agree that Jean Peterson, Barbara Tschopp, Linda Mandell, and Sharon Ribordy (Appellees) are qualified issue. They are entitled to take the "entire interest" that their fathers would have taken had the men survived. Had the fathers, Julius and Earl Gregorius, survived, there would have been four members of the residuary class able to participate in the lapsed Figgins and Davis residuary gifts: i.e., Julius, Earl, Ruth, and Florence. Each member would have taken ¼ of the residuary gift. Accordingly, the lapsed gifts would be divided as follows: Ruth McGuire 1/4, Florence Stephens 1/4, Jean Peterson 1/4, Barbara

Tschopp 1/12, Linda Mandell 1/12, and Sharon Ribordy 1/12. This is precisely how the trial court divided the lapsed gifts. We affirm.

Affirmed.

Judges ARNOLD and WYNN concur.