STATE OF NORTH CAROLINA v. CLIFTON DELANE DAVIS

No. 8726SC1245

(Filed 17 May 1988)

1. **Burglary and Unlawful Breakings § 5.8— first degree burglary—insufficiency of evidence of intent to rape**

   In a prosecution for first degree burglary, evidence was insufficient to show any overt manifestation by defendant of an intended forcible sexual gratification even when it was considered that defendant had been convicted for a rape carried out in the same apartment complex by a similar method.

2. **Arrest and Bail § 6.2— resisting public officer in performance of duty—insufficiency of evidence**

   The trial court erred in not dismissing the charge of resisting a public officer in the performance of his duty where the evidence did not disclose that defendant had been arrested for first degree burglary when he ran from a police officer, but instead disclosed that defendant had not been arrested and that the officer was merely investigating the area after responding to a call to go to the scene. N.C.G.S. § 14-223.

APPEAL by defendant from *Gudger, Judge.* Judgments entered 26 August 1987 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 4 May 1988.

Defendant was charged in proper bills of indictment with first degree burglary in violation of G.S. 14-51, assault on a law-enforcement officer in violation of G.S. 14-33(b)(4), and resisting a public officer in violation of G.S. 14-223. The State's evidence tends to show the following:

On 28 November 1986, Wanda Faye Haskins was living in Apartment 35-D of the Fountain Square Apartments in Charlotte. Her boyfriend visited her and left at approximately 3:30 a.m. Ms. Haskins went to bed approximately five minutes later. Sometime after that Ms. Haskins heard a noise on the steps inside her apartment. She asked who was there and heard no response. She went to the top of the steps and turned on the light. Ms. Haskins was wearing a floor-length nightgown, and she was carrying her son's baseball bat and toy gun. She saw a man on the staircase on the third or fourth step from the bottom. She asked him what he was doing in her apartment, and he told her that he was the maintenance man. He also said, "Wanda, you left the back door open." Ms. Haskins testified that both she and her boyfriend had

checked the back door to make sure it was secure. The man turned around, began using vulgar language, and then went back out the way he came. Ms. Haskins followed him, secured the door and called the police.

Ms. Haskins testified that her name was on a magnetic tag on her refrigerator and on some mail on the living room table. She further testified that she knew all the maintenance men at her complex, and she had never seen defendant as a maintenance man.

Charlotte police officers C. R. Boger and R. B. Davis responded to a call at Fountain Square Apartments at around 4:00 a.m. on 28 November 1986. As Officer Davis was entering the back entrance to the complex he saw defendant duck into an apartment doorway. Davis stopped his patrol car, shined his flashlight on defendant and told him to "come here." Defendant ran around the end of an apartment building. Davis caught up with defendant, and a scuffle ensued. Defendant broke loose and started running again. Defendant ran into some trees, fell over, and was apprehended by officers Davis and Boger. Officer Davis testified that "[a]t that point [defendant] was under arrest for obstructing and delaying and assault on a police officer and resisting arrest." Officer Boger then brought Ms. Haskins to the patrol car where she identified defendant as the man who had been in her apartment.

Defendant was transported to the hospital for treatment of a cut on his forehead. At the hospital Officer Davis read defendant his *Miranda* rights and asked him what he was doing at the apartments. Defendant told him that he went to Apartment 2-E to see his girlfriend, Elaine Kilmer, but she was not there. Defendant explained that he ran from the police because he is married.

Susan Elaine Kilmer Luniewski testified that on 26 August 1973 she lived alone in Apartment 27-A at Fountain Square Apartments. At approximately 5:00 a.m. she was awakened by a noise and found defendant standing in her bedroom doorway. She asked him who he was, and he asked Ms. Luniewski her name, age, place of employment, and marital status. After defendant told Ms. Luniewski that he had a gun he raped her. Ms. Luniewski testified that the police arrived while defendant was still in her bedroom, and defendant told her, "Susan, tell them I am with

you." Ms. Luniewski further testified that she was not his girlfriend and that she had no relationship with him prior to this incident. When she examined her apartment, she found that her sliding glass door in the kitchen, which had been locked, was open. In 1976 defendant was found guilty of the second degree rape of Susan Elaine Kilmer Luniewski.

In the present case defendant was found guilty of first degree burglary and was sentenced to 25 years imprisonment. Defendant was also found guilty of resisting a public officer and assaulting a law-enforcement officer and received a consolidated sentence of 2 years imprisonment. Defendant appealed.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General K. D. Sturgis, for the State.*

*Assistant Public Defender Marc D. Towler, and First Assistant Public Defender James Gronquist, for defendant, appellant.*

HEDRICK, Chief Judge.

[1] Defendant first contends the trial court erred "by denying defendant's motion to dismiss the charge of first degree burglary where the State's evidence failed to show 'some overt manifestation of an intended forcible sexual gratification' and therefore failed to prove an intent to commit rape as alleged in the indictment." In support of this contention defendant cites *State v. Rushing*, 61 N.C. App. 62, 300 S.E. 2d 445, *aff'd per curiam*, 308 N.C. 804, 303 S.E. 2d 822 (1983), and *State v. Freeman*, 307 N.C. 445, 298 S.E. 2d 376 (1983).

In order to support a verdict of guilty of first degree burglary there must be evidence from which a jury could determine that the defendant broke and entered an occupied dwelling house of another at nighttime, with the intent to commit a felony therein. *State v. Wells*, 290 N.C. 485, 226 S.E. 2d 325 (1976). The defendant's intent to commit a felony must exist at the time of entry, and it is no defense that the defendant abandoned the intent after entering. *State v. Wortham*, 80 N.C. App. 54, 341 S.E. 2d 76 (1986), *modified on other grounds*, 318 N.C. 669, 351 S.E. 2d 294 (1987). In the present case the bill of indictment states, "[t]he defendant broke and entered [the dwelling house of Wanda Faye Haskins] with the intent to commit a felony therein, to wit: rape."

Therefore the State was required to introduce "substantial evidence" to permit the jury to find that, at the time defendant broke and entered the dwelling house of Wanda Faye Haskins, he intended to have vaginal intercourse with her by force and against her will. *See State v. Smith,* 40 N.C. App. 72, 252 S.E. 2d 535 (1979), and G.S. 14-27.2 *and* G.S. 14-27.3. Furthermore, the State's evidence must present "some overt manifestation of an intended forcible sexual gratification [by defendant to prevail]." *State v. Planter,* 87 N.C. App. 585, 588, 361 S.E. 2d 768, 769 (1987).

In *State v. Rushing,* 61 N.C. App. 62, 300 S.E. 2d 445, *aff'd per curiam,* 308 N.C. 804, 303 S.E. 2d 822 (1983), the State's evidence showed that in the early morning hours the defendant, wearing dark pants, white fabric gloves, and no shirt, climbed in the window of the room where the victim was sleeping. When she asked who it was, the defendant replied, "Don't holler, don't scream, I got a gun, I'll shoot you." The victim backed up to the head of her bed, and the defendant grabbed her arm. Every time the victim tried to turn on the light the defendant told her not to move. The defendant put his hand over the victim's mouth when she started screaming and then jumped out of the window when the victim's small child started screaming.

The Court found that there was no evidence in that case of "some overt manifestation of an intended forcible sexual gratification." The Court then held that the State's evidence as to the defendant's intent was "at best ambiguous" and was not sufficient to support an inference that at the time he entered the victim's bedroom window he intended to rape the victim. *Id.* at 67, 300 S.E. 2d at 449.

In *State v. Freeman,* 307 N.C. 445, 298 S.E. 2d 376 (1983), the State presented evidence tending to show that the defendant, dressed in a jacket and blue jeans, knocked on the victim's sliding glass door and asked her permission to use the telephone. The victim, who was fully clothed, refused. The defendant forced the door open and pushed his way inside the victim's apartment. The victim managed to push the defendant back outside, but he forced his way in again. The victim again pushed him back outside. The defendant told her, "You shouldn't have enticed me." The victim was unable to close the glass door securely, so she fled through

the front door to a neighbor's apartment where she called the police.

The Court in that case found there to be no evidence to support a finding that at the time defendant broke and entered the apartment, he intended to rape the victim; therefore, the trial court had erred in denying defendant's motion to dismiss the first degree burglary charge.

In the present case, as in *State v. Rushing*, and *State v. Freeman*, there is no evidence of any "overt manifestation of an intended forcible sexual gratification." Here defendant did not touch the victim, and there is no indication that he said anything of a sexual nature to her. Defendant was wearing a jacket and pants and carrying a hat, and the victim was wearing a floor-length nightgown. The evidence in this case shows no overt sexual manifestation by defendant and shows even less sexual suggestion than the evidence in *State v. Rushing* and *State v. Freeman*.

The State concedes in its brief that "[i]t may be that the isolated facts of this defendant's breaking and entering into Ms. Haskins' apartment do not demonstrate the requisite intent." The State then argues that those facts do not stand alone and that the prior conviction of defendant for the rape of Susan Elaine Kilmer Luniewski in the same apartment complex and defendant's statement to Officer Davis that he was at the apartments to see his girlfriend, Elaine Kilmer, leave "no serious doubt about the defendant's intent at the time of the breaking and entry."

We disagree. The evidence of the rape of Ms. Luniewski which occurred 13 years prior to the incident in this case was not alone sufficient to prove intent to commit rape in the present case. The evidence presented by the State fails to show any overt manifestation by defendant of an intended forcible sexual gratification even when it is considered that defendant was convicted for a rape carried out in the same apartment complex by a similar method. By finding defendant guilty of first degree burglary, the jury necessarily found facts which would support defendant's conviction of misdemeanor breaking or entering. The judgment on the verdict of guilty of first degree burglary must be vacated and the cause remanded to the superior court for resentencing on the misdemeanor breaking or entering conviction.

[2]   Defendant next assigns error to the denial of his timely motions for a judgment of nonsuit as to the charge of resisting a public officer discharging or attempting to discharge a duty of his office in violation of G.S. 14-223. The bill of indictment charging defendant with resisting a public officer states in pertinent part:

> [Defendant] did unlawfully and wilfully resist, delay and obstruct R. B. Davis, a public officer holding the office of Charlotte Police Officer, by running from said officer. At the time, the officer was discharging and attempting to discharge a duty of his office, taking said defendant into custody after arrest for the crime of burglary.

In order to charge a violation of G.S. 14-223 the bill of indictment must indicate the specific official duty the officer was discharging or attempting to discharge. *State v. Wells*, 59 N.C. App. 682, 298 S.E. 2d 73 (1982), *cert. denied*, 308 N.C. 194, 302 S.E. 2d 248 (1983). The evidence in the present case does not disclose that defendant had been arrested for first degree burglary when he ran from Officer Davis. In fact, the evidence discloses that defendant had not been arrested and that the officer was merely investigating the area after responding to a call to go to Fountain Square Apartments. The evidence is not sufficient to raise an inference that defendant resisted, delayed, or obstructed Officer Davis in attempting to take defendant "into custody after arrest for the crime of burglary." Thus the trial court erred in not dismissing the charge of resisting a public officer in the performance of his duty.

Defendant raises no question on appeal with respect to the judgment entered on the charge of assault on a law-enforcement officer in violation of G.S. 14-33(b)(4). Therefore, we hold that defendant had a fair trial free from prejudicial error on the charge of assault on a law-enforcement officer.

The result is: The judgment entered on the verdict of first degree burglary is vacated and that cause is remanded to the Superior Court of Mecklenburg County for the entry of judgment on the lesser charge of misdemeanor breaking or entering. Since the judgment entered on the verdict finding defendant guilty of assault on a law-enforcement officer was made to run concurrently with the sentence for first degree burglary, the sentence imposed

Walker v. Durham Life Ins. Co.

for assault on a law-enforcement officer will run concurrently with the misdemeanor charge of breaking or entering.

Vacated and remanded in part; reversed in part; no error in part.

Judges WELLS and COZORT concur.