STATE OF NORTH CAROLINA v. MICHAEL RAY ROBINSON

No. 8918SC394

(Filed 20 March 1990)

1. **Jury § 7.14 (NCI3d)— insufficiency of evidence of racial discrimination**

    Defendant failed to make out a prima facie case of racial discrimination in the State's exercise of peremptory challenges of black jurors where the State accepted 50% of the prospective black jurors tendered; this was insufficient to show that the State was intentionally trying to keep blacks off the jury because of defendant's race; the State asked essentially the same questions of all potential jurors; no questions indicated any prejudice or discrimination on the part of the State's attorney; the fact that defendant was black and the victim was white was insufficient to tip the balance in favor of creating a prima facie case; and defendant failed to present a sufficient record on appeal to include a prospective juror, whose race was not discernible to the attorneys or the judge, in the category of black prospective jurors peremptorily challenged.

    **Am Jur 2d, Jury § 235.**

2. **Rape and Allied Offenses § 5 (NCI3d); Burglary and Unlawful Breakings § 5.3 (NCI3d)— attempted second degree rape— first degree burglary—sufficiency of evidence**

    There was no merit to defendant's contention that the State failed to present sufficient evidence of defendant's specific

intent to commit second degree rape to sustain convictions of first degree burglary and attempted second degree rape where there was evidence that defendant struggled with the victim and tore her underpants, and this was substantial evidence from which the jury could reasonably conclude that defendant intended to rape the victim.

**Am Jur 2d, Burglary § 24; Rape §§ 25, 26.**

3. **Rape and Allied Offenses § 6 (NCI3d) — attempted second degree rape — intent to gratify passion on victim notwithstanding resistance — instruction correct**

In a prosecution of defendant for attempted second degree rape, the trial court did not commit plain error by failing to instruct the jury that defendant must have used or threatened to use force sufficient to overcome any resistance the victim might offer, since the element of intent to commit rape is satisfied by showing that defendant has an intent to gratify his passion upon the victim, notwithstanding any resistance on her part; the trial court stated at several points in his charge that in order to find defendant guilty of attempted rape the jury must find that he intended to have "vaginal intercourse with the victim by force and against her will"; and this charge was sufficient to provide the jury with a correct statement of the law to apply to the evidence before them.

**Am Jur 2d, Burglary § 24; Rape §§ 25, 26.**

4. **Rape and Allied Offenses § 1 (NCI3d) — assault — no lesser offense of attempted rape**

Assault is not a lesser included offense of attempted rape.

**Am Jur 2d, Assault and Battery § 57; Rape §§ 20, 22.**

APPEAL by defendant from judgment entered 21 October 1988 by *Judge Preston Cornelius* in GUILFORD County Superior Court. Heard in the Court of Appeals 17 October 1989.

Defendant was charged and convicted of first-degree burglary and attempted second-degree rape. He was sentenced to the presumptive terms of fifteen years on the burglary conviction and three years for attempted second-degree rape. Defendant gave notice of appeal to this Court in apt time.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Melissa L. Trippe, for the State.*

*Clark & Wharton, by Stanley Hammer, for defendant-appellant.*

JOHNSON, Judge.

The State's evidence tended to show the following: Suzanne Benfield, the victim of the alleged burglary and attempted rape, testified that on 17 April 1988 she locked the front door of her second floor apartment as well as the door to the patio and went to bed about 11:45 p.m. At about 1:00 a.m. she was awakened by a man standing over her. The man put his hand over her mouth, covered her face with a pillow, and pinned her arms down. The assailant then began to struggle with Ms. Benfield who tried to scream; they fell on the floor and the man attempted to rip off her underpants. Suddenly, the man let go of Ms. Benfield and ran from the scene. As the man left, Ms. Benfield saw that he was a tall black man with very short hair. She then went into the living room and saw that the patio door was open about six inches.

Ms. Benfield also testified that defendant lived in her apartment building and that she had spoken with him on two occasions previous to 17 April 1988.

Frank Noah of the Greensboro Police Department testified that he photographed a cut in the screen of the sliding door in Ms. Benfield's apartment and the disarray in her bedroom.

Defendant's evidence in the form of his own testimony was that on the evening of 17 April he went to Ms. Benfield's apartment about 10:00 p.m. and asked to visit. He said she asked him to come back later and would leave a door open. He returned about 12:30 a.m., and, upon finding the front door locked, climbed up over the balcony and entered the patio door which he said was unlocked. He stated that he then entered Ms. Benfield's bedroom and touched her leg to wake her. Defendant stated that she started screaming and it scared him so he covered her face with a pillow and then ran out.

Defendant also gave a statement to Detective Caldwell of the Greensboro Police Department during interrogation. He there stated that he picked up a pillow and looked at Ms. Benfield before she woke up. When she rolled over and looked up, defendant put the

pillow over her face, held it down with one hand and touched Ms. Benfield's leg with the other.

On rebuttal, the State called Ms. Benfield's boyfriend, Rodney Thomasson, who testified that he was with Ms. Benfield on the evening of 17 April until 10:30 p.m., and he did not see defendant that evening.

[1] By his first Assignment of Error, defendant contends that the trial court erred in failing to require the prosecuting attorney to articulate nondiscriminatory reasons for having exercised three (or four) of five peremptory challenges against black jurors.

The State exercised five of its six peremptory challenges. Three of the five were against black potential jurors. A fourth juror excused was stipulated to be either black or Indian. The jury impaneled consisted of three black persons, nine whites, and one white alternate. The trial court specifically found that defendant failed to make out a *prima facie* case of racial discrimination in jury selection.

It is well established that purposeful racial discrimination in the selection of a jury violates the equal protection clause of the Fourteenth Amendment. *Strauder v. West Virginia*, 100 U.S. 303, 25 L.Ed. 664 (1879). In *Batson v. Kentucky*, 476 U.S. 79, 90 L.Ed.2d 69 (1986), the United States Supreme Court set forth the evidentiary burden on a defendant who alleges that a prosecutor's peremptory challenge of potential jurors was motivated by purposeful racial discrimination. To make out a *prima facie* case, defendant must first show that he is a member of a cognizable racial group, and that the prosecution has used peremptory challenges to remove members of defendant's race from the jury. *Id.* The trial court is to consider all relevant circumstances in determining whether a *prima facie* case has been made. If defendant has met his burden of establishing a *prima facie* case, then the burden shifts to the State to come forward with clear and reasonably specific racially neutral reasons for the challenges. The court then decides whether defendant has established purposeful discrimination. The court's findings are to be accorded great deference. *Id.*

Applying these criteria to the instant case, we find that defendant has not made out a *prima facie* case. Although the State challenged three black potential jurors, it also accepted three on the jury. Therefore, it accepted 50% of the prospective black jurors

tendered. This is insufficient to show that the State was intentionally trying to keep blacks off the jury because of the defendant's race. (See *State v. Abbott*, 320 N.C. 475, 358 S.E.2d 365 (1987), in which the Court held that a *prima facie* case was not established when the State was willing to accept 40% of black potential jurors tendered.) We also note that the State asked essentially the same questions of all potential jurors; no questions indicated any prejudice or discrimination on the part of the State's attorney. *State v. Gray*, 322 N.C. 457, 368 S.E.2d 627 (1988). We also do not find that the fact that defendant is black and the alleged victim is white is sufficient to tip the balance in favor of creating a *prima facie* case since the trial court is to be accorded great deference in determining the existence of a *prima facie* case. *Batson, supra*.

The race of one of the peremptorily challenged jurors was not clearly discernible to the attorneys in this case or to the judge. The court found as fact that this potential juror was either black or Indian. Our Supreme Court has stated that "if there is any question as to the prospective juror's race, this issue should be resolved by the trial court based upon questioning of the juror or other proper evidence." *State v. Mitchell*, 321 N.C. 650, 656, 365 S.E.2d 554, 557 (1988). In this case no inquiry was made and the question was left unanswered. Defendant has therefore failed to present a sufficient record on appeal to include this prospective juror in the category of black prospective jurors peremptorily challenged.

Although we recognize that the State was not required in this case to come forward with neutral explanations for its challenges, we observe that it would often be of benefit to a reviewing court if those reasons were articulated in the record.

[2] By his second argument defendant contends that the State failed to present sufficient evidence of defendant's specific intent to commit second-degree rape to sustain convictions of first-degree burglary and attempted second-degree rape.

The State is required to prove beyond a reasonable doubt each essential element of the offense for which the defendant is being tried. *State v. Brown*, 85 N.C. App. 583, 355 S.E.2d 225, *disc. rev. denied*, 320 N.C. 172, 358 S.E.2d 57 (1987). Substantial evidence of each element is necessary. *State v. Bullard*, 312 N.C. 129, 322 S.E.2d 370 (1984). The evidence must be considered in

the light most favorable to the State. *State v. Brown*, 310 N.C. 563, 313 S.E.2d 585 (1984).

The essential elements which need to be established in obtaining a conviction for first-degree burglary are (1) the breaking and entering (2) of an occupied dwelling of another (3) in the nighttime (4) with the intent to commit a felony therein. G.S. sec. 14-51; *State v. Davis*, 90 N.C. App. 185, 368 S.E.2d 52 (1988). The intention of the defendant must exist at the time of entry and the abandonment of such intent by defendant after entry is no defense. *Id.* In the instant case, the State had to present substantial evidence that at the time he entered the dwelling, the defendant intended to have vaginal intercourse with the occupant by force and against her will. To show this intent the State must present "some overt manifestation of an intended forcible sexual gratification [by defendant]." *Id.* at 188, 368 S.E.2d at 54, *quoting State v. Planter*, 87 N.C. App. 585, 588, 361 S.E.2d 768, 769 (1987).

Our Courts have found evidence of a wide variety of conduct sufficient to support a reasonable inference that a defendant intended to commit rape. *See State v. McDougall*, 308 N.C. 1, 301 S.E.2d 308, *cert. denied*, 464 U.S. 865, 78 L.Ed.2d 173 (1983), and *State v. Bell*, 285 N.C. 746, 208 S.E.2d 506 (1974). In the instant case there was evidence that defendant struggled with Ms. Benfield and tore her underpants. This is substantial evidence from which the jury could reasonably conclude that defendant intended to rape Ms. Benfield. This argument is overruled.

[3]    Third, the defendant contends that the trial court committed plain error by failing to instruct the jury that defendant must have used or threatened to use force sufficient to overcome any resistance the victim might offer. He argues that he is therefore entitled to a new trial. We disagree.

The trial court twice asked defense counsel if he had any corrections, deletions, or additions to the jury charge. At no time did he object to the charge given. Therefore, pursuant to Rule 10(b)(2) of the N.C. Rules of Appellate Procedure, defendant may not raise the alleged error on appeal. Only if defendant shows "plain error" in the instructions will he be entitled to a new trial. *State v. Bennett*, 308 N.C. 530, 302 S.E.2d 786 (1983). To determine "plain error," the Court must examine the entire record to see if the alleged defect had a probable impact on the jury's finding defendant guilty. *State v. Odom*, 307 N.C. 655, 300 S.E.2d 375 (1983).

Viewing the court's entire charge, we do not find error. The elements of attempted second-degree rape are "(i) that defendant had the specific intent to rape the victim and (ii) that defendant committed an act that goes beyond mere preparation, but falls short of the actual commission of the rape." *State v. Schultz*, 88 N.C. App. 197, 200, 362 S.E.2d 853, 855 (1987), *aff'd per curiam*, 322 N.C. 467, 368 S.E.2d 386 (1988).

The specific language "intent to overcome any resistance on the part of the victim" is not an element of attempted rape. Rather, the element of intent to commit rape is satisfied by showing that "defendant, at any time during the incident, had an intent to gratify his passion upon the victim, notwithstanding any resistance on her part." *Id.*

At several points in his charge, the able trial judge stated that in order to find the defendant guilty of attempted rape, the jury must determine that defendant intended to have "vaginal intercourse with the victim *by force and against her will.*" This charge was sufficient to provide the jury with a correct statement of the law to apply to the evidence before them. This argument is overruled.

[4] Last, defendant contends that the failure of the trial court to instruct the jury on simple assault as a lesser included offense of attempted second-degree rape constituted prejudicial error. Here again, defendant did not object to the instruction as given or request additional instructions. Therefore, "plain error" is required to entitle him to a new trial.

The determination of whether one offense is a lesser included offense of another is made on a definitional, not a factual basis. *State v. Wortham*, 318 N.C. 669, 351 S.E.2d 294 (1987) (holding that assault on a female is not a lesser included offense of attempted second-degree rape); *State v. Weaver*, 306 N.C. 629, 295 S.E.2d 375 (1982) (holding that taking indecent liberties with a child under the age of sixteen, assaulting a child under the age of twelve, and assault on a female by a male over the age of eighteen are not lesser included offenses of first-degree rape of a child of the age of twelve or less).

The elements of attempted rape are "the intent to commit the rape and an *overt act* done for that purpose." *State v. Freeman*, 307 N.C. 445, 449, 298 S.E.2d 376, 379 (1983) (emphasis in original).

The dispositive question before us is whether the legal definition of the overt act required for attempted rape is the same as that for assault. *State v. Wortham, supra.* "The legal definition of the overt act necessary for attempted rape is an act 'done for that purpose which goes beyond mere preparation but falls short of the completed offense.'" *Id.* at 671, 351 S.E.2d at 296, *quoting State v. Freeman, supra,* at 449, 298 S.E.2d at 379. Our Supreme Court has set forth the legal definition of assault as "an overt act or an attempt, or the unequivocal appearance of an attempt, with force and violence, to do some immediate physical injury to the person of another, which show of force or menace of violence must be sufficient to put a person of reasonable firmness in fear of immediate bodily harm." *State v. Roberts,* 270 N.C. 655, 658, 155 S.E.2d 303, 305 (1967).

The definitions of assault and the overt act required for attempted rape are not legally equivalent. Therefore, applying the definitional test of *State v. Wortham, supra,* we must conclude that assault is not a lesser included offense of attempted rape. The trial court did not err in failing to instruct on assault.

For all the foregoing reasons we find that defendant had a fair trial free of prejudicial error.

No error.

Judges WELLS and ORR concur.