STROUD, Judge.
 

 *89
 
 Defendant appeals from convictions for several drug-related offenses. Defendant's
 
 Batson
 
 argument regarding jurors stricken by the
 
 *90
 
 State fails because he failed to make a
 
 prima facie
 
 case that the State's challenges were racially motivated. The trial court's jury instruction on acting in concert was supported by the evidence. We conclude there was no error in defendant's trial.
 

 I. Background
 

 On 4 December 2015, law enforcement officers responded to a complaint about drug activity at a mobile home where defendant and his girlfriend, Ms. Smith,
 
 [1]
 
 had been living for about two months. Their landlord met the officers at the residence and knocked on the door. Ms. Smith opened the door to the home and officers immediately smelled a chemical odor associated with making methamphetamine. During their initial pat-down of defendant, they found a methamphetamine pipe and a receipt from IGA, dated 4 December 2015, for crystal lye. During their initial sweep of the home when they arrested defendant and Ms. Smith, the officers found items used in making methamphetamine including pliers, rubber gloves, measuring devices, lithium batteries, lye, and aluminum foil; they also found drug paraphernalia including a methamphetamine pipe, chemicals used to make methamphetamine, and Sudafed pills. When he was standing outside the residence, Sudafed pills began falling out of defendant's pants.
 
 [2]
 
 The officers got a search warrant, and, during the search of the mobile home under the warrant, they found much more drug paraphernalia and many other items associated with methamphetamine production throughout the home. Defendant was tried by a jury and convicted of five counts of possession of methamphetamine precursor, one count of manufacturing methamphetamine, and two counts of trafficking in methamphetamine. Defendant timely appeals his convictions to this Court.
 

 *480
 
 II. Jury Selection
 

 Defendant first contends that "[t]he trial judge erred in his handling of [d]efendant's
 
 Batson
 
 motion because there was
 
 prima facie
 
 evidence that the prosecutor's use of peremptory strikes was racially motivated." (Original in all caps).
 

 "The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and Article I, Section 26 of the North Carolina Constitution prohibit race-based peremptory challenges during
 
 *91
 
 jury selection."
 
 State v. Taylor
 
 ,
 
 362 N.C. 514
 
 , 527,
 
 669 S.E.2d 239
 
 , 253-54 (2008). Moreover,
 

 [t]he clear error standard is a federal standard of review adopted by our courts for appellate review of the
 
 Batson
 
 inquiry.
 

 In
 
 Batson v. Kentucky
 
 ,
 
 476 U.S. 79
 
 [
 
 106 S.Ct. 1712
 
 ],
 
 90 L.Ed.2d 69
 
 (1986),
 
 modified
 
 ,
 
 Powers v. Ohio
 
 ,
 
 499 U.S. 400
 
 ,
 
 111 S.Ct. 1364
 
 ,
 
 113 L.Ed.2d 411
 
 (1991), the United States Supreme Court established a three-step test to determine whether the State's peremptory challenges of prospective jurors are purposefully discriminatory. Under
 
 Batson
 
 , the defendant must first successfully establish a
 
 prima facie
 
 case of purposeful discrimination. If the
 
 prima facie
 
 case is not established, it follows that the peremptory challenges are allowed. If the
 
 prima facie
 
 case is established, however, the burden shifts to the prosecutor to offer a race-neutral explanation for each peremptory challenge at issue. If the prosecutor fails to rebut the
 
 prima facie
 
 case of racial discrimination with race-neutral explanations, it follows that the peremptory challenges are not allowed. Finally, the trial court must determine whether the defendant has proven purposeful discrimination.
 

 If the prosecutor volunteers his reasons for the peremptory challenges in question before the trial court rules whether the defendant has made a
 
 prima facie
 
 showing or if the trial court requires the prosecutor to give his reasons without ruling on the question of a
 
 prima facie
 
 showing, the question of whether the defendant has made a
 
 prima facie
 
 showing becomes moot, and it becomes the responsibility of the trial court to make appropriate findings on whether the stated reasons are a credible, nondiscriminatory basis for the challenges or simply pretext.
 

 State v. Wright
 
 ,
 
 189 N.C. App. 346
 
 , 351,
 
 658 S.E.2d 60
 
 , 63-64 (2008) (citations and quotation marks omitted).
 

 In reviewing this determination, we are mindful that trial courts, given their experience in supervising
 
 voir dire
 
 and their ability to observe the prosecutor's questions and demeanor firsthand, are well qualified to decide if the circumstances concerning the prosecutor's use of
 
 *92
 
 peremptory challenges creates a prima facie case of discrimination. The trial court's findings will be upheld on appeal unless they are clearly erroneous-that is, unless "on the entire evidence we are left with the definite and firm conviction that a mistake has been committed.
 

 Taylor
 
 ,
 
 362 N.C. at 527-28
 
 ,
 
 669 S.E.2d at 254
 
 (citations, quotation marks, and brackets omitted).
 

 To establish a
 
 prima facie
 
 case of "purposeful discrimination," a defendant must show that the State used peremptory challenges to remove jurors on the basis of race. Review of the denial of a
 
 Batson
 
 challenge is highly fact specific, and cannot be reduced to simple formula:
 

 In deciding whether the defendant has made the requisite showing, the trial court should consider all relevant circumstances. For example, a "pattern" of strikes against black jurors included in the particular venire might give rise to an inference of discrimination.
 
 Similarly, the prosecutor's questions and statements during voir dire examination and in exercising his challenges may support or refute an inference of discriminatory purpose
 
 . These examples are merely illustrative. We have confidence that trial judges, experienced in supervising
 
 voir dire
 
 , will be able to decide if the circumstances concerning the prosecutor's use of peremptory challenges creates a prima facie case of discrimination against ... jurors [of a certain race].
 

 *481
 

 Batson v. Kentucky
 
 ,
 
 476 U.S. 79
 
 , 96-97,
 
 106 S.Ct. 1712
 
 , 1723,
 
 90 L.Ed.2d 69
 
 , 88 (1986) ;
 
 see also
 

 State v. Smith
 
 ,
 
 328 N.C. 99
 
 , 120-21,
 
 400 S.E.2d 712
 
 , 724 (1991) ("We have also considered questions and statements made by the prosecutor during voir dire examination and in exercising his peremptories which may either lend support to or refute an inference of discrimination.... We have concluded that the discrimination in a case need not be pervasive, as even a single act of invidious discrimination may form the basis for an equal protection violation." (Citations, quotation marks, and brackets omitted) ). Because of the fact specific nature of any
 
 Batson
 
 challenge, the Supreme Court "decline[d] ... to formulate particular procedures to be followed upon a defendant's timely objection to a prosecutor's challenges."
 
 Batson
 
 ,
 
 476 U.S. at 99
 
 ,
 
 106 S.Ct. at 1724-25
 
 ,
 
 90 L.Ed.2d at 89-90
 
 .
 

 The record must contain evidence sufficient to conduct a review of the defendant's specific argument on appeal.
 
 See
 

 *93
 

 State v. Brogden
 
 ,
 
 329 N.C. 534
 
 , 546,
 
 407 S.E.2d 158
 
 , 166 (1991). Depending on the specific argument of the defendant, the evidence required for appellate review may include record evidence of the race of certain or all members of the jury pool. For proper review of denial of a
 
 Batson
 
 challenge, it is necessary that the record establishes the race of any prospective juror that the defendant contends was unconstitutionally excused for discriminatory purpose by peremptory challenge. Our Supreme Court has addressed this issue:
 

 If a defendant in cases such as this believes a prospective juror to be of a particular race,
 
 he can bring this fact to the trial court's attention and ensure that it is made a part of the record
 
 . Further,
 
 if there is any question as to the prospective juror's race
 
 , this issue should be resolved by the trial court based upon questioning of the juror
 
 or other proper evidence
 
 [.]
 

 State v. Mitchell
 
 ,
 
 321 N.C. 650
 
 , 656,
 
 365 S.E.2d 554
 
 , 557 (1988) (emphasis added).
 
 [3]
 
 If there is
 
 not
 
 any question about a prospective juror's race, neither the defendant nor the trial court is required to make inquiry regarding that prospective juror's race:
 

 The race of one of the peremptorily challenged jurors was not clearly discernible to the attorneys in this case or to the judge. The court found as fact that this prospective juror was either black or Indian. Our Supreme Court has stated that "if there is any question as to the prospective juror's race, this issue should be resolved by the trial court based upon questioning of the juror or other proper evidence."
 
 State v. Mitchell
 
 ,
 
 321 N.C. 650
 
 , 656,
 
 365 S.E.2d 554
 
 , 557 (1988). In this case no inquiry was made and the question was left unanswered. Defendant has therefore failed to present a sufficient record on appeal to include this prospective juror in the category of black prospective jurors peremptorily challenged.
 

 State v. Robinson
 
 ,
 
 97 N.C. App. 597
 
 , 601,
 
 389 S.E.2d 417
 
 , 420 (1990) (emphasis added).
 

 We do not believe that the Supreme Court cases cited by the concurring opinion stand for the principle that the
 
 only
 
 method a trial court may use to support a finding concerning the race of a prospective juror
 
 *94
 
 is to ask that juror (and, apparently, just accept the juror's racial self-identification). As the concurring opinion apparently recognizes by citing
 
 Brogden
 
 , all our Supreme Court requires is "proper evidence [of] the race of each juror[.]"
 
 Brogden
 
 ,
 
 329 N.C. at 546
 
 ,
 
 407 S.E.2d at 166
 
 . Certainly, not all African-Americans can be readily identified as such based upon outward appearances. That is why our Supreme Court rejected a scheme whereby the races of prospective jurors could be established for the record based upon notations of an attorney or a court reporter's "subjective impressions."
 

 Id.
 

 When the race of a prospective juror is not obvious, a person's subjective impressions may well be erroneous.
 

 The concurring opinion conflates the role attorneys and other court personnel play in the process with the role of the trial court:
 

 Subjective impressions of a juror's race made by a court reporter, clerk, or
 
 *482
 
 trial counsel are all insufficient to establish an adequate record on appeal.
 
 It follows then that the subjective impressions of a juror's race made by the parties or trial court judge would also be insufficient to establish a proper record of the juror's races on appeal.
 

 (Citations omitted) (emphasis added).
 

 We agree that the subjective impressions of the race of a prospective juror made by "the parties" is not relevant. However, "[t]he trial court has broad discretion in overseeing
 
 voir dire
 
 [.]"
 
 State v. Campbell
 
 ,
 
 359 N.C. 644
 
 , 666,
 
 617 S.E.2d 1
 
 , 15 (2005). In jury
 
 voir dire
 
 the trial court is charged with making legal determinations based upon its factual findings.
 

 "To allow for appellate review, the trial court must make specific findings of fact at each stage of the
 
 Batson
 
 inquiry that it reaches." This Court "
 
 must uphold the trial court's findings unless they are 'clearly erroneous.'
 
 " Under this standard, the fact finder's choice between two permissible views of the evidence "cannot" be considered clearly erroneous. We reverse "only" when, after reviewing the entire record, we are "left with the definite and firm conviction that a mistake has been committed."
 

 State v. Headen
 
 ,
 
 206 N.C. App. 109
 
 , 114-15,
 
 697 S.E.2d 407
 
 , 412 (2010) (emphasis added) (citations and brackets omitted). "Where the record is silent upon a particular point, it will be presumed that the trial court acted correctly in performing his judicial acts and duties."
 
 State v. Fennell
 
 ,
 
 307 N.C. 258
 
 , 262,
 
 297 S.E.2d 393
 
 , 396 (1982). This presumption
 
 *95
 
 of correctness applies to findings made by the trial court.
 
 State v. James
 
 ,
 
 321 N.C. 676
 
 , 686,
 
 365 S.E.2d 579
 
 , 585 (1988).
 

 Further, the
 
 judge's
 
 subjective impressions are not only relevant, but an integral part of the judge's duties: "Upon review, the trial court's determination [whether to excuse a prospective juror] is given great deference because it is based primarily on evaluations of credibility. Such determinations will be upheld as long as the decision is not clearly erroneous."
 
 State v. Fair
 
 ,
 
 354 N.C. 131
 
 , 140,
 
 557 S.E.2d 500
 
 , 509-10 (2001) (citations omitted). Further:
 

 [I]t is the trial court that "is entrusted with the duty to hear testimony, weigh and resolve any conflicts in the evidence, find the facts, and, then based upon those findings, render a legal decision, in the first instance, as to whether or not a constitutional violation of some kind has occurred."
 

 State v. Salinas
 
 ,
 
 366 N.C. 119
 
 , 124,
 
 729 S.E.2d 63
 
 , 67 (2012) (citation omitted).
 

 We disagree with the concurring opinion's conclusion that findings of fact made by the trial court should be given no more weight than "[s]ubjective impressions of a juror's race made by a court reporter, clerk, or trial counsel...." We also disavow any suggestion that our holding would permit the trial court to make a finding of fact about a prospective juror's race "by accepting an interested party's or counsel's untested perceptions as fact." We simply hold that if the trial court determines that it can reliably infer the race of a prospective juror based upon its observations during
 
 voir dire
 
 , and it thereafter makes a finding of fact based upon its observations, a defendant's burden of preserving that prospective juror's race for the record has been met. Absent evidence to the contrary, it will be presumed that the trial court acted properly-i.e. that the evidence of the prospective juror's race was sufficient to support the trial court's finding in that regard.
 
 Fennell
 
 ,
 
 307 N.C. at 262
 
 ,
 
 297 S.E.2d at 396
 
 . If the State disagrees with the finding of the trial court, it should challenge the finding at trial and seek to introduce evidence supporting its position. Questioning the juror at that point could be warranted. Here, however, the State clearly agreed with the trial court's findings related to the race of the five identified prospective jurors. Absent any evidence that the trial court's findings were erroneous, "we must assume that the trial court's findings of fact were supported by substantial competent evidence."
 
 State v. James
 
 ,
 
 321 N.C. 676
 
 , 686,
 
 365 S.E.2d 579
 
 , 585 (1988).
 

 *96
 
 Nothing in the appellate opinions of this State require the trial court to engage in needless inquiry if a prospective juror's race is "clearly discernable" without further inquiry. Here, the record demonstrates that it was
 
 *483
 
 "clearly discernable" to the trial court, and the attorneys for the State and Defendant, that five of the 21 prospective jurors questioned on
 
 voir dire
 
 were African-American, and that two prospective jurors were excused pursuant to peremptory challenges by the State. The following discussion and ruling occurred on defendant's
 
 Batson
 
 motion:
 

 MS. BELL: Judge, I do have a Batson motion. And, Judge, the basis of my motion goes to the fact that in Seat Numbers 10, we had two jurors, [Mr. Jones] and [Ms. Taylor], both of whom were black jurors, and both of whom were excused. And, Judge, in the State's voir dire of both jurors, there was no overwhelming evidence, there was nothing about any prior criminal convictions, any feelings about-towards or against law enforcement, there's no basis, other than the fact that those two jurors happen to be of African-American decent [sic] they were excused.
 
 [4]
 

 We heard from Mr. [Jones] who stated that he was a supervisor here in Clinton and had a breaking and entering two and a half years ago. Nobody was charged, but he had no feelings towards law enforcement, no negative experience with the DA's office. And, with Ms. [Taylor], we heard that she owned a beauty salon that was next to ABC Insurance. She didn't know anyone in the audience or anyone in the case. There was nothing that was deduced during the jury voir dire that would suggest otherwise.
 

 THE COURT: Mr. Thigpen?
 

 MR. THIGPEN: Judge, I don't think Ms. Bell's made a prima facie showing discriminatory intent, which is required under Batson. The simple fact that both jurors happen to have been African-American and I chose to excuse them peremptorily, is not sufficient to raise a Batson challenge.
 

 THE COURT: Seems to me that you excused two, but kept three African-Americans. Am I right?
 

 *97
 
 MR. THIGPEN: Yes, sir, that's right; including Mr. [Anderson], who is Juror Number 5, who is an African-American male; Ms. [Robins], Juror Number 9, who is an African-American female; and Juror Number 7, Ms. [Moore], an African-American female.
 

 THE COURT: All right. I don't see where you've overcome or made a prima facie showing of lack of neutrality.
 

 ....
 

 THE COURT: Okay. Who was it you excused?
 

 MR. THIGPEN: I excused [Mr. Jones] and [Ms. Taylor] who had been both seated in Seat Number 10.
 

 ....
 

 MS. BELL: .... I'm making my case that I have made a prima facie showing, that there was no other reason [for excusing the two African-American prospective jurors], other than that of race[.]
 

 THE COURT: All right. I'm going to deny your motion. Madam Clerk, the Court, from the evidence, the arguments of counsel on the record, the Court finds there is no evidence of a showing of prejudice based on race or any of the contentions in
 
 Batson
 
 , GS 912A, GS 15A-958.
 
 The Court further finds that out of the five jurors who were African-American, three still remain on the panel and have been passed by the State
 
 . The Court concludes there is no prima facie showing justifying the Batson challenge; therefore, the defendant's motion is denied.
 

 (Emphasis added).
 

 Reading the trial court's ruling in context, it seems apparent that the fact that the prospective jurors in question were African-American was clear to the trial court. It is only "if there is any question as to the prospective juror's race [that] this issue should be resolved by the trial court based upon questioning of the juror or other proper evidence."
 
 Mitchell
 
 , 321 N.C. at 656, 365 S.E.2d at 557. The trial court made a finding that five African-Americans had been questioned on
 
 voir dire
 
 , that three made it onto the jury, and that the other two were excused pursuant
 
 *484
 
 to the State's use of peremptory challenges.
 
 *98
 
 However, the State contends that defendant has failed to properly preserve this argument for appeal. Assuming,
 
 arguendo
 
 , that defendant's argument is properly before us, we find no error in the ruling of the trial court and affirm.
 
 See
 

 State v. Willis
 
 ,
 
 332 N.C. 151
 
 , 162,
 
 420 S.E.2d 158
 
 , 162 (1992) ("Assuming it was error to sustain the objections to this testimony by defendant Willis and that it was error for the court to hold that it could not find Willis was a member of a cognizable minority, we cannot hold this was prejudicial error.").
 

 III. Jury Instruction
 

 Last, defendant contends that the trial court erred in instructing the jury over his objection on acting in concert "when the evidence failed to support an inference that ... [defendant] and [Ms. Smith] were acting together in the commission of any crime." (Original in all caps).
 

 The standard of review for appeals regarding jury instructions to which a defendant has properly requested at trial is the following: This Court reviews jury instructions contextually and in its entirety. The charge will be held to be sufficient if it presents the law of the case in such manner as to leave no reasonable cause to believe the jury was misled or misinformed. Under such a standard of review, it is not enough for the appealing party to show that error occurred in the jury instructions; rather, it must be demonstrated that such error was likely, in light of the entire charge, to mislead the jury. If a party requests a jury instruction which is a correct statement of the law and which is supported by the evidence, the trial judge must give the instruction at least in substance.
 

 State v. Cornell
 
 ,
 
 222 N.C. App. 184
 
 , 190-91,
 
 729 S.E.2d 703
 
 , 708 (2012) (citation, quotation marks, ellipses, and brackets omitted). "In order to support a jury instruction on acting in concert, the State must prove that the defendant is present at the scene of the crime and acts together with another who does the acts necessary to constitute the crime pursuant to a common plan or purpose to commit the crime."
 
 State v. Osorio
 
 ,
 
 196 N.C. App. 458
 
 , 466,
 
 675 S.E.2d 144
 
 , 149 (2009) (citation and quotation marks omitted).
 

 Ms. Smith was also charged with various crimes and entered into a plea agreement with the State to testify against defendant. The State elected not to call her to testify at defendant's trial, but defendant called her to testify.
 

 *99
 
 Defendant argues that
 

 The jury should have been told that the state's burden was to prove that [defendant] accomplished each crime on his own. Instead, the judge told jurors they could convict [defendant] if they found that he alone or he acting in concert with [Ms. Smith] had committed the crimes. Because there was no evidence to support the suggestion that Ms. [Smith] was involved, [defendant] is entitled to a new trial.
 

 Defendant claims that Ms. Smith's testimony "corroborated [defendant's] statement: she said the two of them had returned to the house shortly before law enforcement arrived with the landlord. When she and [defendant] returned to the home, they found the glass was broken in the back door."
 

 Defendant argues that the evidence merely shows that Ms. Smith was "present" at the mobile home and
 

 [a] person's mere presence is not enough to establish acting in concert. "A defendant's mere presence at the scene of the crime does not make him guilty [...] even if he sympathizes with the criminal act and does nothing to prevent it."
 
 State v. Capps
 
 ,
 
 77 N.C. App. 400
 
 , 402-03,
 
 335 S.E.2d 189
 
 , 190 (1985). The state is required to prove a common purpose, plan, or scheme
 
 State v. Forney
 
 ,
 
 310 N.C. 126
 
 , 134,
 
 310 S.E.2d 20
 
 , 25 (1984), and in this case Ms. [Smith] denied any such plan or purpose.
 

 Ms. Smith did deny she was involved in a plan to make methamphetamine with defendant, but the jury did not have to believe her.
 
 See, e.g.,
 

 State v. Green
 
 ,
 
 296 N.C. 183
 
 , 188,
 
 250 S.E.2d 197
 
 , 200-01 (1978) ("The credibility of a witness's identification testimony is a matter for the jury's determination,
 
 *485
 
 and only in rare instances will credibility be a matter for the court's determination." (Citation omitted) ). There was abundant evidence showing she was far more than "merely present" at the home during methamphetamine production. We do not understand defendant's argument that "there was no evidence to support the suggestion that [Ms. Smith] was involved" in the crimes charged. She testified she pled guilty to possession of methamphetamine precursor chemical and attempted trafficking for methamphetamine by possession. She also testified that on 4 December 2015, before their arrest and the search of the mobile home, she and defendant went to Walmart to purchase Sudafed and to IGA. The receipt from IGA-which showed that crystal lye was purchased-was found in defendant's pocket when he was arrested
 
 *100
 
 and was admitted as evidence. Sudafed and crystal lye are two primary ingredients used to make methamphetamine. They then went back to defendant's home, where Ms. Smith testified they had previously made methamphetamine. Ms. Smith had been living in the home with defendant for about two months, and officers found methamphetamine ingredients, paraphernalia, and items used to produce methamphetamine in plain view throughout the home in nearly every room-bedroom, living room, bathroom, laundry room, and kitchen. Contrary to defendant's argument, all of the evidence, including Ms. Smith's testimony, tends to show that she was very much involved in making methamphetamine with defendant, despite her denial of any "plan." This evidence is more than sufficient to support an acting in concert instruction. We hold that the trial court did not err in giving the instruction.
 

 IV. Conclusion
 

 We conclude there was no error in defendant's trial.
 

 NO ERROR.
 

 Chief Judge McGEE concurs.
 

 Judge BERGER concurs with separate opinion.
 

 BERGER, Judge, concurring in separate opinion.
 

 I concur in the result reached by the majority. However, I would find that Defendant has waived review of his
 
 Batson
 
 challenge because he failed to preserve an adequate record setting forth the race of the jurors. Our Supreme Court has stated that findings as to the race of jurors may not be established by the subjective impressions or perceptions of "the defendant,
 
 the court
 
 , [ ] counsel" or other court personnel.
 
 State v. Mitchell
 
 ,
 
 321 N.C. 650
 
 , 656,
 
 365 S.E.2d 554
 
 , 557 (1988). (emphasis added.) Because fact finding by guesswork or intuition is inappropriate, I disagree with the majority's conclusion that a trial court's subjective impressions concerning race are sufficient evidence to establish an adequate record on appeal.
 

 Other than speculative statements by counsel and the trial court, there is nothing in the record that demonstrates, as the majority suggests, that it was " 'clearly discernable' to the trial court, and the attorneys for the State and Defendant, that five of the 21 prospective jurors questioned on
 
 voir dire
 
 were African-American." Further inquiry should
 
 *101
 
 be required by a defendant alleging purposeful racial discrimination in jury selection to establish an adequate record for appellate review.
 

 "An individual's race is not always easily discernable."
 
 Mitchell
 
 , 321 N.C. at 655, 365 S.E.2d at 557. When a defendant "believes a prospective juror to be of a particular race, he can bring this fact to the trial court's attention and ensure that it is made a part of the record."
 
 Id.
 
 at 656,
 
 365 S.E.2d at 557
 
 . That was not done here.
 

 In
 
 State v. Mitchell
 
 , our Supreme Court held that the defendant had "failed to present an adequate record on appeal from which to determine whether jurors were improperly excused by peremptory challenges on the basis of race."
 

 Id.
 

 at 655
 
 , 365 S.E.2d at 557. In so holding, the Court in
 
 Mitchell
 
 reasoned that
 

 the burden is on a criminal defendant who alleges racial discrimination in the selection of the jury to establish an inference of purposeful discrimination. The
 
 *486
 
 defendant must provide the appellate court with an adequate record from which to determine whether jurors were improperly excused by peremptory challenges at trial. Statements of counsel alone are insufficient to support a finding of discriminatory use of peremptory challenges....
 

 [Here,] the defendant filed a motion to require the court reporter to note the race of every potential juror examined, which was also denied. Although this approach
 
 might
 
 have preserved a proper record from which an appellate court could determine if any potential jurors were challenged solely on the basis of race, we find it inappropriate. To have a court reporter note the race of every potential juror examined would require a reporter alone to make that determination without the benefit of questioning by counsel or any other evidence that might tend to establish the prospective juror's race.
 
 The court reporter, however, is in no better position to determine the race of each prospective juror than the defendant, the court, or counsel
 
 .... As the trial court noted, "The clerk might note the race as being one race and in fact that person is another race. My observation has been you can look at some people and you cannot really tell what race they are." The approach suggested by the defendant would denigrate the task of preventing peremptory challenges of jurors on the basis of race to the reporter's subjective impressions as to what race they spring from.
 

 *102
 
 If a defendant in cases such as this believes a prospective juror to be of a particular race, he can bring this fact to the trial court's attention and ensure that it is made a part of the record. Further, if there is any question as to the prospective juror's race, this issue should be resolved by the trial court based upon questioning of the juror or other proper evidence, as opposed to leaving the issue to the court reporter who may not make counsel aware of the doubt. In the present case the defendant did not avail himself of this opportunity, despite the trial court's suggestion at the pre-trial hearing that he might wish to do so during jury selection.... For whatever reason, counsel chose not to make any such inquiry at trial. Thus, the defendant has failed to demonstrate that the prosecutor exercised peremptory challenges solely to remove members of any particular race from the jury.
 

 Id.
 
 at 654-56, 365 S.E.2d at 556-58 (1988) (
 
 purgandum
 

 [5]
 
 ) (emphasis added).
 

 The majority here relies almost exclusively on
 
 Mitchell
 
 to support its proposition that "[i]f there is
 
 not
 
 any question about a prospective juror's race, neither the defendant nor the trial court is required to make inquiry regarding the prospective juror's race." Based solely on
 
 Mitchell
 
 , further inquiry regarding each juror's race may not always be necessary when a defendant can somehow demonstrate that each juror's race was "clearly discernable." However, since
 
 Mitchell
 
 , our Supreme Court has effectively held that further inquiry regarding each juror's race is required because perceptions and subjective impressions-standing alone-are insufficient to establish jurors' races.
 

 In
 
 State v. Payne
 
 , our Supreme Court similarly held that "we need not reach the constitutional issues presented by this assignment of error, as we are not presented with a record on appeal which will support the defendant's argument that jurors were improperly excused by peremptory challenges exercised solely on the basis of race."
 
 State v. Payne
 
 ,
 
 327 N.C. 194
 
 , 198,
 
 394 S.E.2d 158
 
 , 160 (1990). The relevant facts in
 
 Payne
 
 were as follows:
 

 *103
 
 the defendant (who is white) objected to the State's use of peremptory challenges against black jurors. The defendant
 
 *487
 
 requested that the courtroom clerk record the race and sex of the "prospective" jurors who had already been seated or excused, but the trial court denied his request. The next morning, the defendant renewed his objection via a written motion for the clerk to record the race and sex of jurors. The motion was supported by an affidavit, subscribed by one of the defendant's attorneys, purporting to contain the name of each black prospective juror examined to that point, and whether the State had peremptorily excused, challenged for cause, or passed the prospective juror to the defense (the defendant says one black juror did sit on the trial jury). The trial court, viewing the affidavit's allegations as true, nonetheless ruled that the defendant had failed to make a prima facie showing of a substantial likelihood that the State was using its peremptory challenges to discriminate against black jurors.
 

 Id.
 

 at 198
 
 ,
 
 394 S.E.2d at 159-60
 
 .
 

 Our Supreme Court agreed with the trial court's assessment
 

 that had the defendant made his motion prior to jury selection, the court would have had each prospective juror state his or her race during the court's initial questioning. This would have provided the trial court with an accurate basis for ruling on the defendant's motion, and would also have preserved an adequate record for appellate review. Having not made his motion to record the race of prospective jurors until after the twelve jurors who actually decided his case had been selected, the defendant attempted to support his motion via an affidavit purporting to provide the names of the black prospective jurors who had been examined to that point. That affidavit, however, contained only the perceptions of one of the defendant's lawyers concerning the races of those excused-perceptions no more adequate than the court reporter's or the clerk's would have been, as we recognized in
 
 Mitchell
 

 .
 
 For the reasons stated in
 
 Mitchell
 
 , we conclude that the trial court did not err by denying the defendant's motion for the clerk to record the race of "prospective jurors" after they had been excused and the jury had been selected. For similar reasons, we also conclude that the record before
 
 *104
 
 us on appeal will not support the defendant's assignment of error.
 

 Id.
 

 at 200
 
 ,
 
 394 S.E.2d at 160-61
 
 (citations omitted).
 

 In
 
 State v. Brogden
 
 , our Supreme Court also held that the defendant "failed to provide an adequate record regarding the race of the jurors, both those accepted and those rejected, and has therefore waived any such objection."
 
 State v. Brogden
 
 ,
 
 329 N.C. 534
 
 , 545,
 
 407 S.E.2d 158
 
 , 165 (1991). Our Supreme Court reasoned that the "defendant,
 
 in failing to elicit from the jurors by means of questioning or other proper evidence the race of each juror
 
 , has failed to carry his burden of establishing an adequate record for appellate review."
 
 Id.
 
 at 546,
 
 407 S.E.2d at 166
 
 (emphasis added). This holding was based on the fact that "the only records of the potential jurors' race preserved for appellate review are the subjective impressions of defendant's counsel and notations made by the court reporter of her subjective impressions."
 

 Id.
 

 Although our Supreme Court appeared to limit the need for further inquiry to instances when the jurors' races were not "easily discernible" in
 
 Mitchell
 
 , 321 N.C. at 655, 365 S.E.2d at 557, subsequent cases have required defendants to provide "proper evidence [of] the race of each juror,"
 
 Brogden
 
 ,
 
 329 N.C. at 546
 
 ,
 
 407 S.E.2d at 166
 
 , to establish an adequate record for appellate review. Subjective impressions of a juror's race made by a court reporter, clerk, or trial counsel are all insufficient to establish an adequate record on appeal.
 
 See
 

 Mitchell
 
 , 321 N.C. at 655-56, 365 S.E.2d at 557 (holding that a court reporter or court clerk's identification of each juror's race as insufficient);
 
 Payne
 
 ,
 
 327 N.C. at 200
 
 ,
 
 394 S.E.2d at 161
 
 (identifying an affidavit that "contained only the perceptions of one of the defendant's lawyers concerning the races of those excused" as inadequate);
 
 Brogden
 
 ,
 
 329 N.C. at 546
 
 ,
 
 407 S.E.2d at 166
 
 (reaffirming that the "subjective impressions of defendant's counsel and notations made by
 
 *488
 
 the court reporter of her subjective impressions" of the jurors' races are insufficient). It follows then that the subjective impressions of a juror's race made by the trial court would also be insufficient to establish a proper record of a juror's race on appeal.
 
 See
 

 State v. Mitchell
 
 , 321 N.C. at 656, 365 S.E.2d at 557 ("The court reporter, however, is in no better position to determine the race of each prospective juror than the defendant,
 
 the court,
 
 or counsel.") (emphasis added).
 

 The majority states that the record here "demonstrates that it was 'clearly discernable' to the trial court, and the attorneys for the State and Defendant, that five of the 21 prospective jurors questioned on
 
 voir dire
 
 were African-American." However, the record contains no
 
 *105
 
 evidence regarding the race of any juror or prospective juror. Not a single juror was ever asked his or her race by Defendant or the trial court. Rather, the record merely contains statements by counsel and the trial court concerning their perceptions and subjective impressions of the prospective jurors' races. This is not enough. We cannot and should not rely on the trial court's and defense counsel's perceptions of the jurors to simply conclude that the jurors' races were "clearly discernible." In the absence of any "proper evidence [of] the race of each juror,"
 
 Brogden
 
 ,
 
 329 N.C. at 546
 
 ,
 
 407 S.E.2d at 166
 
 , I would find that Defendant has failed to provide a record on appeal sufficient to permit this Court to review his
 
 Batson
 
 claim.
 

 The majority's assertion that a trial court's subjective impressions concerning race equates with a credibility determination misses the mark. The majority would essentially allow judges to take judicial notice of an individual juror's race simply by looking at him or her. It seems unusual that judges have acquired this unique skill which is absent in court reporters, clerks, and lawyers. As our Supreme Court held in
 
 Mitchell
 
 , trial courts are in no better position than court personnel, lawyers, or the parties to determine a juror's race based solely on subjective impressions and perceptions.
 

 Where a party accuses opposing counsel of purposeful racial discrimination in jury selection, that party should take appropriate steps to elicit evidence establishing the race of jurors or prospective jurors. Without proper evidence set forth in the record on appeal, this Court should decline to accept subjective impressions of race as fact.
 

 [1]
 

 We will use a pseudonym to protect the privacy of this witness.
 

 [2]
 

 Defendant later told the officers the bags of pills had fallen into his pants when he was sitting on the couch because he wears his pants low.
 

 [3]
 

 We note that our Supreme Court did not dismiss the defendant's
 
 Batson
 
 argument in
 
 Mitchell
 
 , it considered then "overruled" the defendant's
 
 Batson
 
 argument.
 
 Mitchell
 
 , 321 N.C. at 656, 365 S.E.2d at 557-58.
 

 [4]
 

 We have used pseudonyms to protect the privacy of jurors.
 

 [5]
 

 Our shortening of the Latin phrase "
 
 Lex purgandum est
 
 ." This phrase, which roughly translates "that which is superfluous must be removed from the law," was used by Dr. Martin Luther during the Heidelberg Disputation on April 26, 1518 in which Dr. Luther elaborated on his theology of sovereign grace. Here, we use
 
 purgandum
 
 to simply mean that there has been the removal of superfluous items, such as quotation marks, ellipses, brackets, citations, and the like, for ease of reading.